Argued September 9, affirmed November 9, 1960

# LAVITCH v. SMITH

356 P. 2d 531

*Thomas E. Cooney,* Portland, argued the cause for appellant. With him on the brief were Maguire, Shields, Morrison, Bailey & Kester, Portland.

*Charles Paulson,* Portland, argued the cause for

·respondent. With him on the brief were Peterson & Lent, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, GOODWIN and KING, Justices.

ROSSMAN, J.

This is an appeal by the defendant, the owner of a dress shop in Portland, from a judgment in the amount of $2,650 which the circuit court entered in favor of the plaintiff-respondent after the jury had returned its verdict for him. The complaint averred that the plaintiff was in the defendant's store as an invitee and was injured through the defendant's negligence.

The plaintiff at the time of his injury, July 24, 1958, was a salesman for a dress manufacturer and was taking orders from the defendant for dresses which she was purchasing from him. While he was writing the orders a vase fell from a shelf over his head and inflicted an injury.

The defendant-appellant submits two assignments of error, but the brief of her counsel, for the commendable purpose of facilitating their disposal, makes this statement:

"The sole issue on appeal is the trial court's instructing the jury as a matter of law that the plaintiff was a business invitee in the area where the accident occurred. * * *"

It then explains:

"* * * It is defendant's position that there was evidence that plaintiff had exceeded the area of the invitation and therefore whether plaintiff was a business invitee or licensee when the accident occurred was a jury question. * * *"

The defendant's store was rectangular in shape. A partition ran parallel to the rear wall about eight feet

from it thereby creating a rear room which another partition, at right angles to the rear wall, separated into two rooms. One of these two rear rooms was a fitting room and the other was the defendant's office. A door opened from the main store room into the dressing room and from the latter another door opened into the office. The plaintiff's injury befell him while he was seated in the office engaged, as we have indicated, in writing orders for dresses which the defendant called out to him.

When the plaintiff entered the defendant's shop he was escorted by her to the rear area that we just mentioned. The plaintiff swore that the defendant took him through the fitting room into the office and told him to display his dresses there. The defendant testified that she escorted the plaintiff into the fitting room only and showed him some hangers there upon which he could place his dress samples. Having escorted the plaintiff into the fitting room, according to the defendant, and into the office, according to the plaintiff, the defendant returned to a customer upon whom she was waiting when the plaintiff had entered the establishment. In the meantime the plaintiff went to his automobile and obtained from it his dress samples, re-entered the store and then hung the dress samples upon hangers in the office. Presently the defendant entered the office and before long was joined by her assistant.

As we have indicated, there is a conflict in the testimony regarding the room to which the plaintiff was shown by the defendant. But there is no conflict in the evidence as to what happened from that point on. As just stated, the plaintiff hung his samples upon hangers which were attached to a shelf in the defendant's office, and when the defendant returned to

the room he exhibited his samples one by one to her. In so doing he segregated the samples into two lots, one of which was composed of those which she wished to purchase and the other of which held those that she rejected. After the display and segregation had been made the defendant's assistant called out to the plaintiff the numbers that identified the samples which the defendant wished to purchase and he wrote the orders. He was thus engaged when the vase that we have mentioned fell from a shelf and struck him on the head. The plaintiff estimated that he was engaged in his sales efforts for "probably a half-hour."

The defendant-appellant's brief, following its mention that the defendant had taken care of the needs of a customer after she had escorted the plaintiff to the rear room of the store, makes this statement:

> "* * * Upon returning to the fitting room she found plaintiff had gone into her private office and hung his merchandise on a shelf ledge. Since plaintiff was already set up and ready to begin his display, defendant acquiesced in his presence in the private office and proceeded with the business at hand."

It will be noticed that the defendant makes no claim that she asked the plaintiff to withdraw from her office when she discovered that he was in it and was prepared to show his samples there. Nor does she make any intimation that she disapproved of his presence in the office. Having returned to the office and having seen him there she accepted the situation and went ahead for the next half-hour with the transaction of her business with him. As her brief states, "defendant acquiesced in his presence in the private office."

The defendant contends, as is evident from the foregoing, that she had placed at the plaintiff's dis-

posal only the fitting room. She argues that when he entered the office he exceeded the area covered by the invitation she had extended. According to her, the plaintiff was nothing more than a licensee when he was in the office and an issue should have been submitted to the jury as to whether the defendant invited the plaintiff into the office as the place where the business was to be transacted. The plaintiff states that in any event he was permitted to remain in the office without comment from the defendant and without any disapproval from her. He calls attention to the fact that the defendant transacted her business with him in the office after she had noticed that he had hung his samples in that room. He claims that there was nothing to submit to the jury.

■ *Hansen v. Cohen,* 203 Or 157, 276 P2d 391, 278 P2d 808; *Napier v. First Congregational Church,* 157 Or 110, 70 P2d 43; and Prosser on Torts, 2d ed., 78, point out that one who exceeds the area of his invitation is at best a licensee in the area into which he ventures. But that simple rule does not settle the issue before us. *Hansen v. Cohen,* supra, states:

"* * * a person may change his status even though he remains in the same area where he was invited to go."

If we assume that the plaintiff was originally invited into the fitting room only but went into the office where the defendant saw him, acquiesced in his presence and then for a half-hour transacted business with him, the question is, was he an invitee in the office. Since the testimony which shows that the defendant acquiesced in the plaintiff's presence in her office is uncontradicted, it presented no issue of fact for submission to a jury. It submits, however, the issue as to whether the plaintiff, while transacting his business with the defendant

in her office, was a licensee, as she urges, or an invitee, as he claims. The answer to that question depends upon the definition which should be given to the term "invitee."

Harper and James, the Law of Torts, p 1478 § 27.12, states:

"* * * There are two tests currently in vogue, and considerable controversy surrounds the matter. For convenience we shall call one the 'economic benefit' test and the other the 'invitation' test. In a great number of situations, these two tests will yield the same result, but they do not overlap each other completely. The adoption of either test alone will exclude from the class of invitees some entrants who would qualify as invitees under the other test. The actual course of decisions has been towards broadening the class of invitees. It is submitted that under the prevailing rule today, plaintiff may, and should be, classified as an invitee if either the ecoonmic benefit or the invitation theory is satisfied.

"The economic benefit theory proceeds on the assumption that affirmative obligations are imposed on people only in return for some consideration or benefit. Any obligation to discover latent dangerous conditions of the premises is regarded as an affirmative one, and the consideration for imposing it is sought in the economic advantage— actual or potential—of the plaintiff's visit to the occupier's own interest. 'It is not the fact of invitation, nor of the knowledge of the probability of the customer's presence which this implies which raises the duty, but the purpose of the visit and the occupier's interest therein.' This view has had the support of a good many writers and much judicial opinion. It is strongly reflected in the Restatement. Indeed it may be said that most, if not all, courts are willing to regard a visitor as an invitee on the basis of the economic benefit conferred upon the occupier by the visit. * * *

"The invitation test does not deny that 'invita-

tion' may be based on economic benefit, but it does not regard that as essential. Rather it bases 'invitation' on the fact that the occupier by his arrangement of the premises or other conduct has led the entrant to believe 'that [the premises] were intended to be used by visitors' for the purpose which this entrant was pursuing, 'and that such use was not only acquiesced in by the owner [or possessor], but that it was in accordance with the intention and design with which the way or place was adapted and prepared. . . .' Such arrangement or other conduct encourages people to enter the land with a sense of assurance that it has been prepared for their safety. Even an express invitation might not raise such expectations, however. This test is not, for instance, invoked in favor of social guests in the ordinary private home. It has been applied particularly when premises were prepared for the public or a segment of it.

"The invitation test became somewhat discredited among legal writers during the first part of the present century and, no doubt because of the influence and prestige of Bohlen (who acted as reporter), the American Law Institute rejected it in the Restatement. Courts, however, have remained more hospitable than commentators to the test, and it now seems to be coming back into its own in all circles of legal thought. This is as it should be, for the test has merit and deserves acceptance because it accounts more satisfactorily than the economic benefit test for many of the actual decisions holding the plaintiff to be an invitee.

"Many situations, to be sure, may be adequately explained on either basis. Thus the customer in the store, service station or bank, the guest in the hotel or the passenger at the railroad station, the patron at the restaurant, theater or other place of amusement, the patient in the doctor's waiting room or the client in the lawyer's office, would all be classified as invitees by either test."

We take the following from Prosser on Torts, 2d ed., page 453:

"There is, however, an important conflict of opinion as to the definition of an invitee, as well as to whether certain visitors are to be included in this category. The argument turns on the fundamental theory as to the basis of the special obligation which is placed upon the occupier of the land. One theory, which has received approval from a number of legal writers, and has been adopted by the Restatement of Torts, is that the duty of affirmative care to make the premises safe is imposed upon the man in possession as the price he must pay for the economic benefit he derives, or expects to derive, from the presence of the visitor; and that when no such benefit is to be found, he is under no such duty. On this basis the 'business' on which the visitor comes must be one of at least potential pecuniary profit to the possessor.

\*          \*          \*

"The alternative theory, which appears to have been the earlier one, is that the basis of liability is not any economic benefit to the occupier, but a representation to be implied when he encourages others to enter to further a purpose of his own, that reasonable care has been exercised to make the place safe for those who come for that purpose. This idea of course underlies the stress laid upon 'invitation' in so many of the cases; but, as in the case of the social guest, invitation is not enough without the circumstances which convey the implied assurance. \* \* \*

"The Restatement notwithstanding, the second theory is now accepted by the great majority of the courts, and many visitors from whose presence no shadow of pecuniary benefit is to be found are held to be invitees. The list has included persons attending free public lectures, church services and meetings, and college reunions; free spectators invited to public places of amusement; those who enter in the reasonable expectation of buying something not

sold on the premises, or come in response to advertisements of something to be given away; and a long array of members of the public making use of municipal parks and playgrounds, swimming pools, libraries, comfort stations, wharves, golf courses, community centers, and state and federal property."

*Briggs v. John Yeon Co., Inc.,* 168 Or 239, 122 P2d 444, gave effect to the Restatement's definition of a business visitor which is found in § 332, Restatement of Torts, as follows:

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

In the case before us it is apparent that the plaintiff was a business invitee as defined in the section of the Restatement quoted above. That section found acceptance, as we just indicated, in the Briggs decision. The economic test received mention in *Napier v. First Congregational Church,* supra. We deem it unnecessary, therefore, to determine whether the invitation test of which we took note by quotation from Prosser and also from Harper and James is also available in this state.

■ Clearly, one in the defendant's position who welcomes an individual into her place of business and then, finding him seated in her office, acquiesces in his presence there and proceeds to do business with him makes him an invitee. We deem it immaterial whether the defendant at the outset envisaged that the business would be transacted in the fitting room. It is always possible to change plans and the state of one's mind.

We have found no error. The challenged judgment is affirmed.