Argued October 31, reversed and remanded December 14, 1966

# RICH *v.* TITE-KNOT PINE MILL

421 P. 2d 370

*William M. Holmes,* Bend, argued the cause for appellant. With him on the briefs were DeArmond, Goodrich, Gray, Fancher & Holmes, Bend.

*Owen M. Panner,* Bend, argued the cause for respondent. With him on the brief were Roy Kilpatrick, and McKay, Panner, Johnson & Marceau, Bend.

Before McALLISTER, Chief Justice, and PERRY, SLOAN,* O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

Plaintiff brought an action against defendant for damages because of personal injuries received while in defendant's sawmill. Plaintiff's complaint contained two alternative theories of recovery. The first was based upon common law negligence and the second was under the Employers' Liability Act. Upon the completion of plaintiff's case in chief the court granted an involuntary non-suit as to plaintiff's second theory. The case was submitted to the jury on the common law theory and the jury returned a verdict for plaintiff. Defendant appealed.

■ Throughout the entire proceedings in this case plaintiff's alternative theories of recovery were treated by both parties as separate causes of action. Non-suits were moved for against them separately and demurrers were filed against them in the same manner. Actually, there was only one cause of action and a non-suit or demurrer will not lie to one theory of recovery or, in effect, to a portion of a cause of action. While we will refer to the proceedings taken by defendant against plaintiff's complaints by the nomenclature the parties used, we are treating the motions for non-suits against plaintiff's separate theories of recovery as motions to withdraw them from the consideration of the jury, and the demurrers as motions to separately strike.

Plaintiff called at defendant's mill seeking work.

---

* Sloan, J. did not participate in the decision of this case.

He was told by the mill superintendent that defendant did not need anyone on the day shift but to check with the night shift foreman. Plaintiff testified he thereafter pulled a few boards from the green chain and talked to the men working there and departed. The next morning plaintiff returned to the mill and again sought employment from the superintendent. He was again told there was no work on the day shift but to check with the night foreman. Both of these conversations were in the mill where plaintiff had sought out the superintendent, and not in the mill office. Plaintiff testified that prior to the second conversation and before plaintiff saw the superintendent, he assisted one of the mill owners, who was the superintendent's father, straighten a pile-up of lumber on the roll case. No one objected. Later, after his conversation with the superintendent, he claimed he again pulled a few boards from the green chain and talked to the men working there.

Plaintiff returned that evening and went into the mill. While he was having a conversation with the edgerman, and before he talked to the night shift foreman, lumber again became disarranged on the roll case. Without being requested to do so plaintiff started to straighten it. While so doing, the metal tab on the zipper of his sweatshirt caught in a slot known as the keyway in a revolving metal shaft in the roll case. As a result, plaintiff's clothing was wound up on the revolving shaft and was stripped from him, and he was thrown to the floor where he received serious and permanent injury to his leg and foot.

Defendant assigns as error the court's failure to give its requested instruction relative to the definition of a trespasser and the duty owed by a property owner to a trespasser. This and subsequent assign-

ments of error bring into question the nature of plaintiff's status on the premises at the time of the accident, defendant's duty to plaintiff, and the kind of negligence attributed to defendant.

The two allegations of negligence submitted by the court to the jury were defendant's failure to guard the shaft and to warn plaintiff of the danger. There was no claim of any active negligence on defendant's part. The negligence charged related solely to the condition of the premises and failure to warn of its condition.

■■ A trespasser is one who enters or remains on premises in the possession of another without a privilege to do so, created by the possessor's consent or otherwise. *Hansen v. Cohen et al*, 203 Or 157, 165, 276 P2d 391, 278 P2d 898 (1954) ; 2 Restatement 891, Torts, § 329. Except for situations not relevant here, the possessor is not liable for injuries to trespassers caused by his failure to exercise reasonable care to put his premises in a safe condition. *State v. Standard*, 232 Or 333, 338, 375 P2d 551 (1962); *Hansen v. Cohen et al*, supra, at 161; *Akerson v. D. C. Bates & Sons, Inc.*, 180 Or 224, 228, 174 P2d 953 (1946); Prosser, Torts, (3d ed) 365, § 58.

■■ A licensee is one who comes upon the premises for his own purposes with the consent of the possessor. *Hansen v. Cohen et al*, supra, at 165. The possessor owes no duty to a licensee to put his premises in a safe condition but is under an obligation to disclose to the licensee any concealed, dangerous conditions of the premises of which he has knowledge. *Burch v. Peterson et ux*, 207 Or 232, 235, 295 P2d 868 (1956); *McHenry v. Howells et ux*, 201 Or 697, 703, 272 P2d 210 (1954) ; Prosser, supra, 385, 390, § 60.

■ An invitee is one who comes upon the premises

upon business which concerns the occupier, with the occupier's invitation, expressed or implied. The occupier not only has the duty to warn of latent dangers, but also has an affirmative duty to protect an invitee against those dangers in the condition of the premises of which he knows or should have known by the exercise of reasonable care. Prosser, supra, 402, 403, § 61.

At the time of the accident plaintiff was on defendant's premises and within its mill with the implied consent of defendant. Therefore, the fact that he was within the mill did not make him a trespasser. Plaintiff without objection had twice previously contacted defendant's mill superintendent within the confines of the mill seeking employment, and in each instance was told he should come back later and contact the night foreman. The mill superinendent testified as follows:

"A Oh, I—I told him to check back. Didn't need anybody on the day shift, he might check with the night shift and—the night foreman.
"* * * * *

"A He was—looked—still looking for a job. And we didn't, we—the day shift was pretty well filled and I told him to—might check back for the night shift."

 It does not necessarily follow, however, that plaintiff was not a trespasser while working at the roll case. A person who comes on another's premises may be a licensee or invitee for one purpose or part of the premises and not for another. *Lavitch v. Smith,* 224 Or 498, 502, 356 P2d 531 (1960); *Grahn v. Northwest Sport, Inc.,* 210 Or 249, 255, 310 P2d 306 (1957); *Hansen v. Cohen et al,* supra, at 162. If an invitee, for the purpose which brought him, is encouraged to go to an unusual part of the premises to which the purpose

would not usually take him, he remains an invitee. If he goes to such a place with consent but without such encouragement and solely on his own initiative, he is a licensee. If he goes to such a place without encouragement and without consent, he is a trespasser. Prosser, supra, 402, § 61.

"The mere fact that a person is invited into a structure and thereby becomes an invitee does not mean that he is an invitee in every part of the building and that he is at liberty to enter wherever he wishes. For example, a person who enters a bank and makes a deposit of money at the window of a teller would discover that his status as an invitee had changed to that of a trespasser if he attempted to make his way into the teller's cage." *Dutton v. Donald M. Drake Co.*, 237 Or 419, 425, 391 P2d 761 (1964).

It also follows that one who originally enters the premises as a licensee may forfeit his license and become a trespasser if he exceeds its scope. *Hansen v. Cohen et al*, supra, at 164.

■ The implied consent given by the mill superintendent to come back in the mill to seek employment did not authorize plaintiff to come into the mill for the purpose of going to work at unguarded machinery. Plaintiff sought to show that there was such implied authorization by his testimony that he had previously done similar work with one of the mill owners, and by the testimony of his brother that the mill superintendent said he had been observing plaintiff and was about ready to hire him within a few minutes of the accident because he acted like he knew what he was doing.

The testimony produced by plaintiff concerning the work he performed on the premises and defendant's

knowledge thereof is not admitted by defendant. There was testimony by the superintendent that he was told by some mill employees, at a time designated to be neither before nor after the accident, that the plaintiff had pulled a board or two on the green chain. The superintendent also said he was about to hire plaintiff because he looked like he knew what he was doing around sawmills. However, there was no testimony, other than that offered by plaintiff, that plaintiff had previously done work at the unguarded roll case or that defendant knew of such action.

The jurors were entitled to disbelieve plaintiff's testimony. If they chose to disbelieve it, the jurors could have found that plaintiff was a trespasser while engaged at the roll case despite the fact that plaintiff originally entered the mill as a licensee or an invitee. Therefore, defendant was entitled to have his theory that plaintiff was a trespasser presented to the jury. The court's failure to so present plaintiff's theory was reversible error.

There are other questions raised on appeal which may reoccur upon retrial and which should therefore be decided. Defendant contends that the court should not have instructed concerning a concealed danger or trap in relation to defendant's duty to a licensee because there was no evidence of a trap at a place where plaintiff's presence might have been anticipated by defendant. The jury, however, could have found that plaintiff had been previously permitted to engage in the same activity for the purpose of demonstrating his familiarity with sawmill work. From this testimony it could be concluded that, upon plaintiff's return to seek employment on the night shift in accordance with instructions, his presence at the roll case was impliedly consented to by defendant and should

have been anticipated by it. There was no error in instructing concerning a trap.

■ Defendant also assigned as error the court's failure to withdraw from the consideration of the jury the specification of common law negligence which alleged that defendant should have warned plaintiff of the danger of the exposed mechanism. Defendant contends it had no knowledge of plaintiff's presence at the roll case and had not consented to it. We have previously determined that there was evidence from which the jury could have found that defendant should have anticipated plaintiff's presence there and had impliedly consented to it. The assignment is without merit.

■ In the next two specifications of error defendant claims the court should have granted his motions for involuntary non-suit and directed verdict because there was no evidence that defendant failed in any duty alleged in plaintiff's complaint and owed to plaintiff. It also contended that plaintiff was contributorily negligent as a matter of law. In the discussion of the two previous specifications of error we have held that there was sufficient evidence to justify submission to the jury of the allegation that defendant was negligent in failing to warn plaintiff of hidden danger under the theory that plaintiff was a licensee. There was also sufficient evidence to find that plaintiff's presence on the premises and at the roll case was for the mutual benefit of both plaintiff and defendant, and that plaintiff was therefore an invitee to whom defendant owed the duty of guarding the mechanism. The assurance of sufficient employees on the night shift who had demonstrated to defendant's satisfaction their ability to do sawmill work was sufficient

to make plaintiff's presence at the roll case a benefit to defendant's operation. Whether defendant, in the exercise of reasonable care, should have realized and protected himself from the danger involved was a matter for the jury. There was no basis for either an involuntary non-suit or a directed verdict.

■ Defendant assigns as error the court's denial of its motion to make more definite and certain the allegations of plaintiff's common law negligence theory of recovery, which set forth that at defendant's request plaintiff remained at the mill and did occasional jobs. The motion sought to require plaintiff to specify what part of the mill area plaintiff remained upon and where he did occasional jobs. The motion was not well taken as defendant was seeking the evidence by which the allegations would be proved. Depositions are available to secure this type of information.

■ Defendant next contends the court erred in overruling a demurrer to plaintiff's common law negligence theory of recovery. Defendant claims it is deficient because it does not allege the status of plaintiff on defendant's premises at the time of the accident. The complaint alleged as follows:

"On March 25, 1964, plaintiff applied at defendant's sawmill for employment as a millhand. Defendant asked plaintiff to remain at the mill since defendant had just started the mill in operation and needed new employees from time to time. Plaintiff did remain at the mill and with the knowledge of the defendant assisted defendant in occasional jobs at said mill.

"While plaintiff was assisting defendant in such occasional jobs, the boards on the live roll behind the bandsaw in the defendant's mill became tangled. Plaintiff attempted to untangle said boards and his clothing caught in the driving mechanism of

the rolls throwing the plaintiff about and mangling his right leg."

It is not the obligation of plaintiff to allege his status at the time of the accident. This would be a conclusion. It is only necessary to allege facts from which his status can be inferred. More than one inference might be drawn from a certain alleged set of facts. The quoted allegations are sufficient for this purpose.

██ Defendant's next two claims of error were the court's denial of a motion to strike and the overruling of a demurrer which were both directed towards plaintiff's theory of recovery under the Employers' Liability Act. Defendant contends there was no allegation that plaintiff was an employee and the pleading was therefore deficient. It is well established that to entitle a person to recover under the Act, he must establish that he is an employee.[1] Plaintiff's pleading of his theory of recovery under the Employers' Liability Act also included the allegations previously quoted from his common law theory. We find that the alleged facts, if proved, are sufficient upon which to base a finding by the jury that plaintiff was an employee.

██ The next two assignments of error relate to the propriety of allowing plaintiff, before there was any evidence that he was an employee, to produce evidence of the violation of the Employers' Liability Act and certain safety codes. Plaintiff was allowed to show by both photographic and oral testimony that defend-

---

[1] Thomas v. Foglio, 225 Or 540, 544, 358 P2d 1066 (1961); Byers et al v. Hardy et al, 216 Or 42, 48, 337 P2d 806 (1959); Drefs v. Holman Transfer Co. et al, 130 Or 452, 459, 280 P 505 (1929); Saylor v. Enterprise Electric Co., 106 Or 421, 439-440, 212 P 477 (1923); Hornschuch v. Southern Pac. Co. et al, 101 Or 280, 293, 203 P 886 (1921); Turnridge v. Thompson, 89 Or 637, 653, 175 P 281 (1918).

ant had installed a guard over the shaft after the accident. He also introduced in evidence excerpts from the basic safety code and the safety code for sawmills, woodworking and allied industries. He then put on oral testimony of the manner in which the excerpted portions of the codes had been violated. This was all done prior to the production of any evidence that plaintiff was an employee, and in fact plaintiff never did prove that he was an employee. It is questionable whether defendant protected its record in a manner sufficient to raise the question on appeal because at times defendant objected and at other times he permitted similar testimony to come in without objection. The case will have to be retried so it is immaterial, except in so far as the same problem of order of proof may arise on retrial. The trial court permitted the introduction of this evidence upon the supposition that it would subsequently be shown to be relevant. When it did not become relevant the court instructed the jury to disregard the evidence but allowed the photographic evidence and the excerpts from the safety codes to go to the jury nevertheless. The order of proof is within the discretion of the trial judge and will not be disturbed except for an abuse of discretion. *Parmentier v. Ransom,* 179 Or 17, 21, 169 P2d 883 (1946); *Wemett v. Mount,* 134 Or 305, 312, 292 P 93 (1930). However, evidence of the kind and extent of that in question is extremely difficult for a jury to ignore and an admonition by the trial court is of doubtful efficacy. A trial court is on tenuous ground in permitting such a substantial departure from the usual order of proof when the evidence offered is subsequently revealed to be irrelevant.

■ The foregoing presumes that the admitted evidence was not admissible in support of plaintiff's com-

mon law negligence theory of recovery. It is the rule in this state, and in most other jurisdictions[2] that common law negligence may not be proved by the introduction of evidence that subsequent to the accident in question defendant made improvements or repairs to the instrumentality that caused the injury.[3] This rule is inapplicable to a claim under the Employers' Liability Act because of the provisions of ORS 654.305.[4]

█ It has never been directly determined whether the safety codes promulgated by the Workmen's Compensation Board[5] under the authority of ORS 654.025 are limited in application to employees. It is apparent that this was the legislative intention. The following excerpts from *Hillman v. North. Wasco Co. PUD,* 213 Or 264, 289-290, 323 P2d 664 (1958), illustrate why:

"The basic purpose of the safety act is clearly evident from the language of the first section thereof, now ORS 654.010,* which in substance requires every employer to (1) furnish employment

---

[2] The lone exception is Kansas.

[3] Williams et al v. Portland Gen. Elec., 195 Or 597, 602-603, 247 P2d 494 (1952); Ericksons Dairy Co. v. N. W. Baker Ice Co., 165 Or 553, 556-557, 109 P2d 53 (1941); Strickler v. Portland Ry., L. P. Co., 79 Or 526, 532, 144 P 1193, 155 P 1195 (1916); Foster v. University Lumber Co., 65 Or 46, 63-64, 131 P 736 (1913); Love v. Chambers Lumber Co., 64 Or 129, 134, 129 P 492 (1913); Skottowe v. O.S.L. etc. Ry. Co., 22 Or 430, 439, 30 P 222 (1892). Also see cases collected at 64 ALR 2d 1296, 1300.

[4] "654.305 Protection and safety of persons in hazardous employment generally. Generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employes or the public, *shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb,* limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices." (Emphasis added.)

[5] Formerly known as the Industrial Accident Commission. Change occurred by virtue of Oregon Laws 1965, ch 285.

* Footnotes omitted.

safe for employees therein; (2) furnish a place of employment safe for employees therein; (3) furnish and use such safety devices and to adopt such means as are reasonably adequate to render such employment and place of employment safe; and (4) to do every other thing reasonably necessary to protect the life and safety of such employees.

"* * * * *

"Authority to make reasonable rules and regulations to carry into effect the provisions of the act is vested in the commission by ORS 654.025.* Under this authority the commission has adopted a basic safety code and other codes for particular industries. ORS 654.990 makes a violation of ORS 654.010 to 654.020 and any lawful order, rule or regulation promulgated by the commission punishable by fine or imprisonment.

"* * * * *

"Since the safety act was adopted for the protection of the employees, * * *."

The *Hillman* case specifically declined to decide whether the codes had application to persons other than employees. In this case the question is directly before us and we decide they do not.

■ The next assignment of error is based on the court's denial of defendant's motion requiring plaintiff to elect whether he would try the case on his first or second theory of recovery. There is nothing inconsistent or repugnant about a theory of recovery based on common law negligence and one under the Employers' Liability Act. Where there is no inconsistency plaintiff should not be required to elect between two alternative theories of recovery. *Helzer v. Wax*, 127 Or 427, 429-430, 272 P 556 (1928).

■ Defendant claims the court erred in failing to

---

* Footnotes omitted.

sustain its objection to plaintiff's use of the deposition of defendant's mill superintendent as substantive evidence when the superintendent was present in the court room and available as a witness. Defendant was a corporation and in so far as the evidence discloses had no plant or activity other than the one with which we are here concerned. The superintendent was in charge of both the day and the night shifts. ORS 45.250 provides in part as follows:

> "(1) At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any of the following provisions of this subsection:
>
> "* * * * *
>
> "(b) The deposition of a party, or of anyone who at the time of taking the deposition was an officer, director or managing agent of a public or private corporation, partnership or association which is a party, may be used by an adverse party for any purpose."

Under the circumstances we believe the mill superintendent was a managing agent of defendant and the objection was not well taken.

Lastly, defendant contends the court erred in failing to sustain his objection to plaintiff's use in argument to the jury of a per diem or mathematical formula as the basis for determining damages for pain and suffering. The following argument was objected to:

> "* * * He's working as a janitor. He's doing the best he can. We are not going to tell you that

he can't work. His wage, his earning capacity is certainly damaged to some extent.

"How much? Is it damaged to the extent of a dollar a day, two dollars a day? How do you measure? What can you do?

"If, for example, under his impairment of earning capacity, if he loses over the next thirty years of his life an average of a dollar a day for the impairment of earning capacity which, considering all the future events and the condition that he's in, it's not too unreasonable to expect that he would —there's 10,950 days. Based on a life expectancy or a working expectancy of thirty years, —."

■ It is apparent that the argument is not directed towards damages for pain and suffering but towards loss of earning capacity. The above argument is appropriate in a situation like the present one where plaintiff has suffered a serious injury which will limit his activities. The argument is not a representation to the jury that plaintiff will lose a specific amount of money per day, but is a suggested course of reasoning from the evidence of his injuries to an award which will include damages for loss of future earning capacity.

The case is reversed and remanded for a new trial in conformance with this opinion.