Argued June 2, 1969, reargued March 2, affirmed in part
and reversed in part April 8, 1970

CARIGNAN, *Respondent, v.* ALFORD LOGGING
CO. ET AL, *Appellants.*

467 P. 2d 442

*Carrell F. Bradley,* Hillsboro, argued and reargued the cause for appellant Alford Logging Co. With him on the briefs were Schwenn, Bradley & Batchelor and Robert W. Redding, Hillsboro.

*Frederic P. Roehr,* Portland, argued and reargued the cause for appellant Perry Jones. With him on the brief were Vergeer, Samuels, Roehr & Sweek, Portland.

*John C. Anicker,* Oregon City, argued and reargued the cause for respondent. With him on the brief were Jack, Goodwin & Anicker, Oregon City.

TONGUE, J.

This is an action to recover damages to plaintiff's truck. Defendants appeal from a judgment on a verdict in favor of plaintiff.

Defendant Alford Logging Co., was a logging contractor. Defendant Perry Jones was hired by Alford to fall and buck the timber on timberlands owned by the federal government and plaintiff Carignan was hired to haul the logs from the property. Both Jones and plaintiff were independent contractors. On April 13, 1966, one of plaintiff's drivers drove his truck up to be loaded. Since there was a truck at the loading dock and since there was no room for the truck to turn around except at the loader, the driver pulled off and parked on a turnout prepared by Alford near the loading dock. The driver then alighted and stood talking with the drivers of two other trucks who were also waiting to be loaded. Nearby, employees of defendant Jones were preparing to fell a lone tree left standing in an area previously logged. Plaintiff and the other drivers watched for about ten minutes the preparations being made for felling the tree. Although the tree was notched to fall in a direction parallel to the trucks, it fell directly over one of plaintiff's trucks causing $6,123.03 in damage.

The complaint alleged that defendant Jones was negligent in that "said defendant felled a tree, which was a hazardous tree, without any precautions for guiding its fall and caused said tree to fall across the roadway used by said plaintiff and other truckers in hauling logs" and that defendant Alford was negligent "in failing to install any system of flagmen or other warning, to warn the truckers using said roadway of the hazard being created."

At the close of the evidence both defendants moved for a directed verdict. The motions were denied. Defendant Jones contends that his motion should be granted on the ground that there was no evidence to support the allegation that the tree was negligently felled. Defendant Alford contends that the court erred in denying its motion on the ground that there was no evidence of Alford's knowledge of Jones' activity in the loading area and on the further ground that plaintiff was contributorily negligent as a matter of law.

■ We shall first consider defendant Jones' contention that there was no evidence of negligence on the part of his employees. There was evidence that the tree was a "leaner" and was dangerous for that reason. The tree had not been felled as a part of the initial logging operation in that area because it was considered too dangerous to fell at that time. Defendant Jones or his employees were aware of this danger at the time the tree was finally felled. There is also evidence that the tree was felled by incompetent workmen. One of the drivers testified that after the accident defendant Jones "told us they left the tree because it was a bad tree and the faller was supposed to be sick, the bucker was falling and he said

they had no business doing it." On the basis of this evidence the jury reasonably could find that defendant Jones and his employees were negligent.

■ Next, we shall consider the contention that plaintiff's truck driver was guilty of contributory negligence as a matter of law. It is true that the three truck drivers saw Jones' employees preparing to fell the tree and watched them for some ten minutes, during which they might have backed the three trucks to a position of safety. We cannot say as a matter of law, however, that reasonable men in that position would have realized the full extent and gravity of the danger or that reasonable men would have then attempted to back their trucks down the road to a position of safety.

The negligence of plaintiff's truck driver in these circumstances would depend upon his knowledge of the danger involved in felling "leaners", the direction that the particular tree was leaning, the difficulty involved in backing his truck out of its position of danger, and the availability of another location for the parking of his truck, among other factors, all of which were matters for proper consideration by the jury. *Dawson v. Payless For Drugs,* 248 Or 334, 341, 433 P2d 1019 (1967).

The question of liability of defendant Alford Logging Co. is more difficult. It is contended by plaintiff on this appeal that Alford was "a possessor of real property" and, as such, had "the duty to warn invitees of danger arising out of the condition of the premises", with the result that Alford "had more than the duty to warn. He had the duty to correct the unreasonably dangerous situation", citing 2 Restatement of Torts 2d, § 343; 2 Harper & James, The Law of

Torts, 1489, § 27.13; *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966); and *Dawson v. Payless For Drugs,* 248 Or 334, 433 P2d 1019.

These authorities all relate to the "special liability of possessors of land to invitees". Thus, under that topic heading, the following rule is stated in 2 Restatement of Torts 2d, § 343:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > "(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > "(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > "(c) fails to exercise reasonable care to protect them against the danger."

2 Harper & James, The Law of Torts, 1489, § 27.13, relating to the liability of "owners and occupiers of land", is to a similar effect, as are *Rich v. Tite-Knot Pine Mill, supra,* at 192 and *Dawson v. Payless For Drugs, supra,* at 339-40.

Thus, the question is presented whether, under the pleadings and evidence of this case, as well as the basis on which the case was submitted to the jury, plaintiff can properly contend on this appeal that defendant Alford Logging Co. was a "possessor of land" or the "owner or occupier of land", so as to have such a "special liability" to plaintiff, as an "invitee" upon the land.

The complaint, after alleging the corporate capacity of defendant Alford, is as follows:

"II

That the defendant, Perry Jones, at all times herein mentioned was in charge of felling and bucking timber adjacent to the old Peavine Road in Clackamas County, Oregon.

"III

That on the 13th day of April, 1966, the defendant corporation was in charge of logging and removing timber felled and bucked by the co-defendant and in charge of the roadway and the loading of timber on logging trucks.

"IV

That at said time and place plaintiff was the owner and Bob Harmon was the operator of a logging truck in the course of hauling logs for said defendant corporation.

"V

That on said date the defendants felled a tree across plaintiff's truck, completely demolishing the same, and causing damage in the amount of $6,123.03, which represents the difference in value of the vehicle prior to and subsequent to said accident.

\* \* \* \* \*

"VII

That said accident was caused by the negligence of the defendant Perry Jones in the following particulars:

1. Said defendant fell a tree, which was a hazardous tree, without any precautions or guiding its fall and caused said tree to fall across the roadway used by said plaintiff and other truckers in hauling logs.

## "VIII

That said accident was caused by the negligence of the defendant Alford Logging Co., Inc. in the following particulars:

1. In failing to install any system of flagmen or other warning, warning the truckers using said roadway of the hazard being created.

## "IX

That said negligence on the part of each and both of the defendants as hereinabove alleged was the proximate cause of said accident and the damage herein sustained."

It will be noted that the complaint does not allege that Alford had any control over the falling and bucking of the timber, much less that Alford was the "possessor", "owner" or "occupier" of the entire tract, including that portion of the property on which the falling and bucking operations were being conducted. Cf. *Christopher v. McGuire,* 179 Or 116, 119, 169 P2d 879 (1946). On the contrary, the complaint alleges that Jones *"at all times herein mentioned, was in charge of felling and bucking timber"* and that Alford was "in charge of logging and removing timber felled and bucked by the co-defendant and *in charge of the roadway and the loading of timber* on logging trucks."

Similarly, at the time of trial, no evidence was offered to show the relationship between Alford and the owner of the timberland. It appears that the timber was "a National Forest Timber sale", but it does not appear whether Alford was the purchaser of the timber from the government or whether he had some arrangement with the purchaser for logging the timber. The contract, if any, between Alford and either the government or the purchaser of the timber, and

setting forth the resulting powers and duties assumed by Alford, was not offered in evidence.

Indeed, there was no evidence of the nature or extent of the possession or control had or exercised by Alford, other than a copy of a contract by which Alford engaged Jones, as an independent contractor, to fall and buck the timber on the tract; testimony that Alford determined what "areas" were to be cut and where to start work, but that he did not control "how I do the work", together with testimony that Alford entered into a similar contract with Carignan for hauling the logs, under which thirteen trucks, with drivers employed by Carignan, were engaged. There was also testimony that it was presumably Alford who had provided the loading area and the road for the trucks, including a wide place in the snow and mud for the trucks to park while they were waiting to be loaded. There was evidence, however, that normally the trucks did not stop at that location, but did so on the day of the accident only because, due to weather conditions, including snow, there were not enough logs to keep the trucks "moving out" with the result that they "piled up".

There was no evidence, however, that any officer, agent or employee of Alford was either present or engaged in any activity on any portion of the property on the day of its occurrence, or at any other time, much less that Alford had any actual knowledge that Jones had left this lone "leaner" near the road or that Jones intended to fall it on that particular day, or at any other time. In addition, the evidence of the physical "layout" of the loading area, road, cut timber, standing timber and the "leaner" was extremely vague, due to the use by witnesses of a "diagram" which was not offered in evidence.

■ It also appears from the record that no instruction was given by the trial court by which the jury was informed of the nature and extent of the duties of the owner, possessor or occupier of land to an invitee, much less the limitations imposed by law upon the duties owed by such a person. Nor was any such instruction apparently requested by any party. Thus, the basis and manner in which this case was pleaded, tried and submitted to the jury were insufficient to support a verdict against Alford.

■ In any event, the evidence in this case proved no more than that Alford was the "possessor" and "occupier" of the logging landing and logging road, including the "turn-out" where plaintiff's truck was parked. Alford was thus under a duty to warn plaintiff's truck driver of any danger arising out of the condition of the landing, road and "turn-out" of which he knew or should have known, in the exercise of reasonable care. But we do not believe that this imposed upon Alford a duty to inspect other portions of the premises to determine whether there were any leaning trees within reach of the landing, road or "turn-out", much less to determine when Jones intended to fall any such trees.

In this connection, it is also significant that plaintiff made no attempt to impose vicarious liability upon Alford for the negligence of Jones as an independent contractor engaged by Alford to perform an inherently dangerous activity (see 2 Restatement of Torts, § 413). On the contrary, plaintiff conceded on trial that Alford was not responsible for the negligence of Jones. In addition, plaintiff's complaint (as set forth above) does not plead the employment by Alford of Jones as an independent contractor, either in terms of Restatement, § 413, or otherwise. And, again, no instructions

were given by which the jury was informed of the nature and extent of the duties owed by one who employs an independent contractor to perform an inherently dangerous activity.

The final remaining question is whether, upon the basis of the pleadings, evidence and instructions in this case, the defendant Alford had a duty to warn plaintiff's truck drivers that fallers employed by Jones were about to fall a dangerous "leaner" within reach of the roadway on which plaintiff's trucks were parked —the sole specification of negligence alleged against Alford.

Plaintiff contends on appeal that since there was evidence that Alford "determined the area of cutting", the jury could infer that "Alford directed the cutting of the tree in question", with the result that it was necessary that he give some warning to plaintiff's truck drivers. There is no evidence, however, that Alford told Jones to cut this particular tree or that Alford "directed the falling" of this "leaner". Indeed, there is no evidence that Alford had any knowledge of the existence of the "leaner", much less that Alford had any knowledge that employees of defendant Jones intended to fall it on that particular day.

■ In the absence of such evidence, and in the absence of pleading, evidence and instructions sufficient to provide a basis upon which the jury could properly find that Alford owed either the duties of a "possessor of real property" or the duties of the employer of an independent contractor to perform an inherently dangerous activity, we hold that neither was there any basis upon which the jury could properly find that defendant Alford owed a duty to find out when Jones intended to fall that particular tree and to post flag-

men or to otherwise warn plaintiff's truck drivers on the day when Jones' employees undertook to do so.

It follows, for all of these reasons, that the motion of Alford for a directed verdict should have been allowed.

Affirmed as to defendant Jones. Reversed as to defendant Alford Logging Co.

HOLMAN, J., concurring.

Section 413 of the Restatement (Second) of Torts, upon which the dissenting opinion relies, recognizes by the comment to the section that the section "is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all the ordinary and customary dangers which may arise in the course of the contemplated work." The most ordinary and customary danger of tree falling is that trees can be unpredictable and do not always fall as intended— particularly when a tree is a "leaner." This is so generally recognized within the profession that the basic safety code, which has the verity of a statute, requires that a flagman be present when falling such a tree adjacent a road. In the absence of some sort of notice to the contrary, I believe that Alford could assume that Jones would take precautions that were so elementary that the written law requires them. I do not believe Alford had the duty to others to follow Jones around to make sure he would obey such a regulation.

O'CONNELL, J., dissenting.

I agree with that part of the majority opinion holding that there was sufficient evidence to submit to the jury the issue of defendant Jones' negligence.

I am of the opinion that there was also sufficient

evidence of defendant Alford Logging Company's negligence to present a jury question.

As the majority opinion points out, plaintiff conceded at the trial that Alford was not liable on the basis of Jones' negligence. But this concession does not preclude plaintiff from making out his case based upon the negligence of Alford. An employer of an independent contractor may be liable for the non-negligent conduct of an independent contractor if the employer himself is negligent. The question is, then, whether Alford has a duty to plaintiff under the circumstances of this case.

The law relating to the liability of an employer for the acts of an independent contractor is in a state of confusion and transition. The so-called "general rule" that an employer is not liable for the acts of an independent contractor has been increasingly diluted by exceptions "whose very number," Prosser observes, "is sufficient to cast doubt upon the validity of the rule."[1] Prosser notes that "The Restatement of Torts has devoted no less than twenty-one sections to the list." One of these exceptions is stated in 2 Restatement (Second) of Torts § 413 (1965):

> "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
> "(a) fails to provide in the contract that the contractor shall take such precautions, or
> "(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

---

[1] Prosser on Torts, § 70, p. 481 (3d ed 1962).

The comment appended to Section 413 explains that the section has no reference to "a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. * * * This section is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions." (2 Restatement (Second) of Torts, at p. 385).

The comment further explains that the term "peculiar" used in the statement of the exception "does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself."[2]

---

[2] The term "peculiar unreasonable risk" used in Section 413 apparently is regarded by the drafters of the Restatement as having the same meaning as "inherently dangerous." Thus in the comment to Section 427, which states the exception to the rule of non-liability where the "work involv[es] a special danger * * * which the employer knows * * * to be inherent in or normal to the work," it is explained that

"* * * It is not, however, necessary to the employer's liability that the work be of a kind which cannot be done without a risk of harm to others, or that it be of a kind which involves a high degree of risk of such harm, or that the risk be one of very serious harm, such as death or serious bodily injury. It is not necessary that the work call for any special skill or care in doing it. It is sufficient that work of any kind involves a risk, recognizable in advance, of physical harm to others which is inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it, or that the employer has special reason to contemplate such a risk under the particular circumstances under which the work is to be done." Id. at p. 416.

The question, then, is whether the work Alford entrusted to Jones was of a type which involved special risks against which a reasonable man would recognize the necessity of taking special precautions. The need for special precautions in the performance of the type of work delegated to Jones is made eminently clear by the Safety Code for Logging, Supplemental to The Basic Safety Code for the State of Oregon (May 15, 1958). The pertinent sections of this Code are as follows:

"1.12 Dangerous Trees and Snags within reach of landings, roads or rigging shall be felled before the regular operations begin.

"NOTE: *Tall or rotten snags, rotten or leaning trees, or trees which are likely to be blown over or pulled down are among those considered dangerous.*

"* * * * *

"3.7 Fallers and buckers shall not work or be placed near any running lines, guylines or other units of operation that will endanger them or other workmen.

"* * * * *

"3.10 A flagman shall be stationed to direct traffic when there is danger in falling a tree adjacent to a cat road, motor road or railroad.

"* * * * *

"3.24 Fallers shall give timely warning to buckers and other persons in the vicinity of a tree about to be felled, indicating the direction of fall, and taking notice that such persons are not only out of reach of the tree but also in the clear of logs, fallen trees, snags or other trees which may be struck by the falling tree. Fallers shall * * * make sure that this warning has been heard and heeded by all [persons known to be] in the vicinity."

Unless special precautions were taken, the felling of trees near the loading area was likely to create an unreasonable risk of harm to persons and property in the loading area. Under Restatement (Second) of Torts, § 413, Alford had an affirmative duty to see to it that all reasonable precautions were taken for plaintiff's safety. There is sufficient evidence in this case to warrant a jury finding that Alford did not fulfill this duty.

Alford makes much of the fact that it had directed logging operations in another area some distance from the place of the accident and therefore had no knowledge that Jones was carrying on a falling operation in the loading area. Whether Jones felled the "leaner" tree as a part of the original falling and bucking operation in the loading area or waited, as he did, until later, is of no significance. The employer who delegates to an independent contractor work involving a special danger to others is not excused from liability by showing that he did not anticipate the particular act of negligence engaged in by the independent contractor.[9]

The majority makes a point of the fact that plaintiff's complaint does not allege that Alford hired Jones as an independent contractor and further that no in-

---

[9] "* * * [I]t seems questionable whether the absence of 'expectation' as regards the commission of a particular act of negligence is an appropriate criterion for determining the applicability of a doctrine which has reference to the character of the stipulated work as a whole. The essence of that doctrine, it is submitted, is that, if the work is of such a nature as to bring it within the category * * *, the employer is subject to a positive duty to see that it is carefully performed in all details. If this view is correct, the employer's responsibility must extend to every negligent act of the contractor and his servants which is in a reasonable sense incidental to the work, irrespective of whether it was 'expected' or not. * * *" 23 ALR 1016, 1027 (1923).

structions were given by which the jury would be informed of the nature and extent of the duties owed by an employer of an independent contractor employed to perform an inherently dangerous activity. I do not think it is essential that the pleadings and instructions' specify the duty of the employer in such circumstances.

The special duty owed by the employer who employs an independent contractor to perform especially dangerous work is merely a corollary of the general rule that a person owes the duty of due care to others who may be endangered by activities he undertakes. The dangerous character of the work entrusted to another is merely a part of the circumstances which the jury must consider in deciding whether the defendant has met the duty which the law has imposed upon him. The general instructions on negligence are sufficient, in my opinion, to submit for the jury's consideration the question of Alford's responsibility for providing safeguards against the hazards of felling dangerous trees.

The judgment should be affirmed.