Argued May 5, reversed and remanded July 12, 1977

TAYLOR, *Appellant,*
*v.*
BAKER et ux, *Respondents.*
(No. 93384, SC 24746)

TAYLOR, *Appellant,*
*v.*
BAKER et ux, *Respondents.*
(No. 93383, SC 24752)
566 P2d 884

[ 140 ]

Darrell F. Bewley, Portland, argued the cause for appellants. With him on the briefs were James C. Niedermeyer and Niedermeyer & Bewley, Portland.

James C. Tait, Oregon City, argued the cause for respondents. With him on the brief were Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

BRYSON, J.

**BRYSON, J.**

Plaintiff, Lillian Taylor, brought this action[1] to recover damages for injuries sustained as a result of a fall from a second-story window of defendants' residence. The first of plaintiff's two counts alleges that plaintiff was upon defendants' premises "for a business purpose of interest and benefit to defendants and each of them" and "[t]hat defendants and each of them knew, or in the exercise of reasonable diligence should have known, that the manner of construction and maintenance of said premises were likely to cause injury, but defendants, and each of them, failed and neglected to give plaintiff any warning of said conditions."

The second count alleges that "plaintiff was upon the said premises at defendants request and invitations" and "[t]hat the aforesaid conditions were concealed from this plaintiff and defendants and each of them knew that plaintiff could not discover them, but they failed and neglected to give plaintiff any warning thereof."

Defendants moved, pursuant to ORS 18.105, for partial summary judgment on plaintiff's first count and offered in support of their motion the depositions of Lillian and C. O. Taylor, the only evidence in this case.

The trial court found "there is no genuine issue as to the plaintiff not being at the defendants' premises for a business purpose of interest and benefit to defendants and each of them" and granted partial summary judgment as to plaintiff's count 1.[2] The trial

---

[1]Plaintiff's case is trial court file No. 93383 (SC 24752). Plaintiff's husband, C. O. Taylor, filed an action for loss of consortium, trial court file No. 93384 (SC 24746). We ordered the cases consolidated for briefs and argument and "plaintiff" refers to both Lillian C. and C. O. Taylor.

[2]Oregon's summary judgment statute, ORS 18.105 (Oregon Laws 1975, ch 106, § 1), is patterned after Rule 56 of the Federal Rules of Civil Procedure. However, subsection (d) of Rule 56 was not adopted by the legislature. That subsection gives federal district courts authority to

court's order also gave plaintiff 15 days within which to plead further.

Plaintiff chose not to plead further and, determining that no case could be proven under the second count, moved the trial court to enter an order of voluntary nonsuit. The motion was allowed, and plaintiff now seeks review of the trial court's order allowing partial summary judgment.

Plaintiff's sole assignment of error is as follows:

"The court erred in granting the motion for summary judgment on the ground and for the reason that it was a jury question whether defendants had exercised the proper degree of care."

Defendants first contend that "judgments of voluntary non-suit are not appealable judgments" and that this appeal must be dismissed. In *Steenson v. Robinson,* 236 Or 414, 416-17, 385 P2d 738 (1964), we acknowledged that "[i]t is the general rule that a party may not appeal from a judgment which he voluntarily requested." (Annotations omitted.) The right to appeal is denied to a plaintiff requesting voluntary nonsuit as a matter of judicial policy and not because of statutory prohibition. However, the fact that the final order was entered on plaintiff's request for nonsuit does not

establish certain facts as uncontested for purposes of trial. However, the legislative history reveals that this deletion was not intended to eliminate from the statute the trial court's authority to render partial summary judgments. See testimony of Donald W. McEwen (Oregon State Bar Committee on Procedure and Practice) before the House Judiciary Committee, January 30, 1975; and testimony of Laird Kirkpatrick (Oregon State Bar) before the Senate Judiciary Committee, February 24, 1975. Therefore, federal cases interpreting those aspects of Rule 56, other than subsection (d) thereof, and decided prior to the enactment of this state's summary judgment statute, are entitled to great weight. *See Southern Pacific v. Bryson,* 254 Or 478, 479, 459 P2d 881 (1969); *State ex rel Western Seed v. Campbell,* 250 Or 262, 270-71, 442 P2d 215 (1968).

The federal courts have held partial summary judgments to be interlocutory and, barring special statutory authorization, not subject to appeal prior to the final determination of the entire case. See 6 Part 2 Moore's Federal Practice ¶ 56.20[3.-1]. Being interlocutory, they are also without res judicata effect. 6 Part 2 Moore's Federal Practice ¶ 56.20[1].

necessarily preclude review in this case. In *Farris v. U.S. Fidelity & Guaranty,* 273 Or 628, 630-31, 542 P2d 1031 (1975), we noted that an order of nonsuit may "determine" a case for purposes of ORS 19.010(2)(a) even though plaintiff may refile his lawsuit, and allowed appeal from a final order of voluntary nonsuit. In that case it was held that a request for voluntary nonsuit which is necessitated by a prior trial court ruling precluding recovery is not in fact voluntarily requested and should not bar appeal.

As a policy matter, the difficulty in determining whether or not appeal should be allowed lies in separating those cases where the summary judgment determines the action from those where the plaintiff merely seeks premature appellate review of an interlocutory partial summary judgment order.

We have consistently followed a policy of not allowing piecemeal appeals.[3] This policy would be defeated if litigants were permitted to seek appellate review of one portion of their claim while holding other theories in abeyance, to be refiled in the event of an adverse appellate ruling.

We believe that appeal of partial summary judgments should be generally allowed after entry of an order of nonsuit under the circumstances of this case.

---

[3] Article VII (original) § 6, of the Oregon Constitution provides:

"The Supreme Court shall have jurisdiction only to revise the *final decisions* of the Circuit Courts * * *." (Emphasis added.)

ORS 18.010 defines "judgment" to be "the *final determination* of the rights of the parties in an action or special proceeding." (Emphasis added.) And, ORS 19.010(2) completes the statutory framework by providing that "[f]or the purpose of being reviewed on appeal the following shall be deemed a judgment or decree:

"(2)(a) An order affecting a substantial right, and which in effect determines the action or suit so as to prevent a judgment or decree therein.

"* * * * *.

"(c) A final order affecting a substantial right, and made in a proceeding after judgment or decree."

See also, *Lulay v. Earle,* 278 Or 511, 564 P2d 1045 (1977); *Johnson v. Assured Employment,* 277 Or 11, 558 P2d 1228 (1977); *Dlouhy v. Simpson Timber Co.,* 247 Or 571, 431 P2d 846 (1967).

The doctrine of res judicata should prevent the problems of piecemeal appeal that would argue against allowing such appeal.

In *Dean v. Exotic Veneers, Inc.,* 271 Or 188, 531 P2d 266 (1975), we discussed the purpose underlying the doctrine of res judicata as follows:

"The principal purposes of res judicata are prevention of harassment of defendants by successive legal proceedings as well as economy of judicial resources. Its scope is related to the limits upon the various forms of relief which may be requested in one proceeding and the limitations upon amendments to pleadings during trial. As permissible joinder of requests for various forms of relief and amendments during trial become broader and more liberal, the reasons behind res judicata dictate that parties to actions be required to make use of such liberal procedures and not be permitted to protract litigation through a multiplicity of suits or actions which can be disposed of in one proceeding. See Clark on Code Pleading 472-78 (2d ed 1947); also, *Jarvy v. Mowrey,* 235 Or 579, 583, 385 P2d 336 (1963). * * *" 271 Or at 192.

5. Res judicata applies not only to every claim included in the pleadings but also to every claim which could have been alleged under the same "aggregate of operative facts which compose a single occasion for judicial relief." *Del Monte Meat Co., Inc. v. Hurt,* 277 Or 615, 617, 561 P2d 627 (1977); *Dean v. Exotic Veneers, Inc., supra* at 196.

A plaintiff's willingness to forego litigation on alternative theories should be sufficient to guarantee that the partial summary judgment had the effect of rendering plaintiff's nonsuit truly involuntary.

■ ORS 18.250 provides that "[w]hen a judgment of nonsuit is given, the action is dismissed; but such judgment shall not have the effect to bar another action for the same cause." However, we do not find this provision to be applicable to cases, such as the one at bar, where the nonsuit is only the formal termination of a case which by plaintiff's own admission has in fact been determined by the trial court's decision to

grant partial summary judgment as to one count. Consequently, the doctrine of res judicata should be just as applicable as if it were the summary judgment which had in form as well as in fact been the final order terminating the case.

Plaintiff's appeal is properly before us. We turn now to the merits of the case and plaintiff's assignment of error. In *Forest Grove Brick v. Strickland,* 277 Or 81, 87, 559 P2d 502 (1977), we discussed the duties of an appellate court when reviewing a summary judgment and held:

> "To warrant summary judgment the moving party must show that there is no genuine issue of material fact. It is not the function of this court on review to decide issues of fact but solely to determine if there is an issue of fact to be tried. We review the record on summary judgment in the light most favorable to the party opposing the motion." (Footnote omitted.)

When so reviewed, the record reveals plaintiff to have gone unannounced and uninvited to defendants' residence to collect money owed to them for certain antiques purchased by defendants. This was the first time plaintiff had ever been to defendants' home.

Plaintiff was greeted at the door by defendant Larry Baker and at his invitation entered the house and went into the family room. There they were joined by defendant Judith Baker, wife of Larry Baker, and at defendants' invitation plaintiff was taken on a tour of the house. The only explanation for this tour was that given by plaintiff, who stated that it was "just [that] they were just proud of it because they had been working on it so long."

Plaintiff was injured when she fell through the upstairs window while being shown the house by defendants.

Plaintiff first asks this court to overrule the rule long recognized by this court that the duty owed by a possessor of land depends upon the purpose for which the injured party was upon the land at the time of his

[ 145 ]

injury. *See Rich v. Tite-Knot Pine Mill,* 245 Or 185, 191-92, 421 P2d 370 (1966); *Lange v. St. Johns Lumber Co.,* 115 Or 337, 237 P 696 (1925). Because of our holding regarding application of Restatement of Torts (Second) 176, § 332, and the posture of this case, without evidence, we do not reach this contention. The trial court's order of partial summary judgment will be affirmed if the evidence shows there to be no factual dispute that plaintiff was not a business invitee at the time of her accident.[4]

Two tests are currently applied to determine whether plaintiff's status on the premises was that of an invitee: the economic benefit test and the invitation test.[5] The rule expressed in Restatement of Torts (Second), § 332, provides as follows:

> "(1) An invitee is either a public invitee or a business visitor.
>
> "(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> "(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

In this case we are only concerned with the application of the economic benefit or business visitor test, Restatement of Torts (Second), § 332(3), as plaintiff chose to take a nonsuit on the count alleging the invitation test.

---

[4]Defendants contend that plaintiff did not properly assign as error the trial court's determination that there was no disputed factual question that plaintiff was not upon defendants' property as a business invitee. While we agree with defendants that plaintiff's assignment of error is not as artfully and clearly drawn as it might have been, we believe that the issue, as it pertains to the propriety of the trial court's granting of a summary judgment, is before this court. The issue was fully briefed and argued by the parties. No unfair surprise or waste of judicial time can be claimed as grounds for refusing to determine the issue.

[5]*Parker v. Hult Lumber & Plywood Co.,* 260 Or 1, 8-12, 488 P2d 454 (1971); *Lavitch v. Smith,* 224 Or 498, 505-06, 356 P2d 531 (1960).

It is sufficient under the Restatement that the plaintiff have been upon the land to conduct business dealings with the land possessor. It is not necessary that plaintiff prove actual benefit to the defendant, only that the relationship be commercial rather than social.

Comment *e* to § 332 explains this aspect of the Restatement definition of business visitor as follows:

"*e* * * * Business visitors fall into two classes. * * *.

"The second class includes those who come upon land not open to the public, for a purpose connected with business which the possessor conducts upon the land, or for a purpose connected with their own business which is connected with any purpose, business or otherwise, for which the possessor uses the land. * * *."

■■ Problems are presented by this broad definition where, as in the instant case, the property involved is residential and not a place where defendants typically engage in commercial activity. We are not prepared to establish any precedent which would hold residential property possessors to a duty of inspection and warning to every bill collector, door-to-door solicitor or parties with like position. Also, we do not adopt the latter limitation expressed in the following emphasized part of Comment *e,* "or for a purpose connected with their own business *which is connected with any purpose, business or otherwise, for which the possessor uses the land.* * * *" A visitor such as plaintiff who comes upon the possessor's land with his business with defendant, whether or not connected with any purpose for which the possessor uses the land, could be invited to come upon the possessor's land to discuss business dealings between them after the visitor has disclosed the purpose of the visit. If so invited after the purpose of the visit is disclosed, such a person is a business visitor. Persons invited into the residence of another to transact business should be permitted to expect that the portion of the house into which they have been invited has been made reasonably safe for them. Nothing compels a possessor of land to allow such

persons entry into his or her residence and if he denies them entry, their status never rises above that of a licensee. In *Lavitch v. Smith,* 224 Or 498, 506, 356 P2d 531 (1960), we quoted from *Briggs v. John Yeon Co., Inc.,* 168 Or 239, 122 P2d 444 (1942), as follows:

" 'A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them.' "

The critical status of plaintiff is not that held by plaintiff upon entry onto the premises, but that held at the moment of injury. As we noted in *Rich v. Tite-Knot Pine Mill, supra* at 192-93:

"* * * A person who comes on another's premises may be a licensee or invitee for one purpose or part of the premises and not for another. *Lavitch v. Smith,* 224 Or 498, 502, 356 P2d 531 (1960); *Grahn v. Northwest Sport, Inc.,* 210 Or 249, 255, 310 P2d 306 (1957); *Hansen v. Cohen et al,* [203 Or 157] supra, at 162. If an invitee, for the purpose which brought him, is encouraged to go to an unusual part of the premises to which the purpose would not usually take him, he remains an invitee. If he goes to such a place with consent but without such encouragement and solely on his own initiative, he is a licensee. If he goes to such a place without encouragement and without consent, he is a trespasser. * * *."

Comment *1* to Restatement of Torts (Second) § 332 offers the following illustration:

"* * * * *.

"If the invitee goes outside of the area of his invitation, he becomes a trespasser or a licensee, depending upon whether he goes there without the consent of the possessor, or with such consent. Thus one who goes into a shop which occupies part of a building, the rest of which is used as the possessor's residence, is a trespasser if he goes into the residential part of the premises without the shopkeeper's consent; but he is a licensee if the shopkeeper permits him to go to the bathroom, or invites him to pay a social call.

"* * * * *."

In the instant case, we are without sufficient

evidence to determine whether or not plaintiff's status in defendants' second-floor room was that of a licensee or invitee. The trial court was in the same position.

Defendants offered no evidence clarifying the nature or purpose of plaintiff's presence while on the house tour, and there is no evidence that defendants were not aware of the purpose of plaintiff's visit. Defendants chose to rely upon the theory that a bill collector who calls upon and is invited into a private residence can never be a business visitor. As we have pointed out, there can be a distinction.

It is true that plaintiff's evidence included a statement that defendants took them on the tour just because they were very proud of all the work they had put into the residence. However, this reveals nothing of the purpose which caused plaintiff to consent to the tour.

In 6 Moore's Federal Practice (2d ed) ¶ 56.15[3] it is stated:

> "The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter of law.
> "* * * * *."

■ Plaintiff had no duty to offer contrary evidence until defendants, the moving parties, had offered evidence that would entitle them "to a directed verdict." *See Pelege v. Chrysler,* 278 Or 223, 227 n.2, 563 P2d 701 (1977).

From our review of the two depositions offered by defendants, we conclude that defendants failed in their burden of proof. There remained an issue of fact to be tried.

Reversed and remanded.