DEMARIS, *Respondent,*
*v.*
WHITTIER, *Appellant.*
(No. 10223, SC P-2506)
569 P2d 605

Ralph C. Spooner, Salem, argued the cause for appellant. With him on the briefs were Williams, Spooner & Graves, (P.C.), Salem.

Burl L. Green, Portland, argued the cause for respondent. On the brief were Green & Griswold and Michael R. Shinn, Portland.

Before Denecke, Chief Justice, Tongue, Bryson, Justices, and Tompkins, Justice Pro Tempore.

DENECKE, C. J.

## DENECKE, C. J.

The plaintiff recovered a verdict in this personal injury action and defendant appeals. We affirm.

■ Defendant's first assignment of error is that the trial court erred in denying defendant's motion for leave to join Peter Dukes as a third-party defendant pursuant to ORS 16.315(4) (a). Defendant's reason for moving to join Dukes was to enforce a possible right of contribution against Dukes in the event plaintiff recovered against defendant. Dukes' pickup was parked either on or just off the highway. His pickup would not start and plaintiff stopped to help. Plaintiff was struck by defendant's car while plaintiff was attempting to start Dukes' pickup.

Defendant still has the right to seek contribution from Dukes. The only detriment defendant incurred by the trial court's denial of his motion was defendant's inability to try the issue of Dukes' obligation to contribute in the lawsuit brought by plaintiff rather than in a separate lawsuit brought by defendant. This is not such prejudice as would justify reversal even if we were to conclude that the trial court's ruling was in error.

Defendant's second assignment of error challenges the admission into evidence of a set of photographs. The photographs were taken sequentially along the highway at 16 pace intervals approaching the curve where the accident occurred. They were daytime photographs showing a car parked on the shoulder of the road. The pictures were taken two days before trial by an investigator employed by plaintiff's attorneys for the purpose of litigation. There was testimony that the scene depicted in the photographs was substantially similar to the scene at the time of the accident, except for the presence of the car rather than a pickup and the lighting.

The parties agree that photographs may be admitted even though some changes have occurred

[ 27 ]

since the time of the accident and that there must be a reasonable balance between the probative value of the photographs and any prejudice which might result from their admission. They also agree that the photographs must be shown to be true and faithful representations and that they will not mislead the jury. Counsel's disagreement arises over the application of the law to the facts.

■ Objections to the pictures were initially sustained. Later three of the pictures were admitted to show the distance between the pavement and the bank along the road. The presence of the car in the picture shows only that there was enough room off the pavement to park a car and not where the pickups were parked at the time of the accident. The fact that it was a car and not a pickup goes to the weight and not to the admissibility of the evidence.

At a later stage in the trial the defendant testified to the existence of a dip in the highway which obstructed his vision of the vehicles. He introduced a picture to show a dip in the road. Thereafter the court admitted the remaining pictures at plaintiff's request to show whether there was a "physical impediment to vision." The court made it clear that the exhibits were not admitted for any purpose that might show a test or experimentation.

■ We believe the trial judge exercised proper judgment in the admission of the photographic exhibits. Probative value and prejudicial effect were carefully weighed and given proper consideration. There was no error in the court's ruling.

The defendant also assigns as error the trial court's overruling of his objection to a portion of plaintiff's counsel's closing argument to the jury. The argument, objection and ruling were:

"[MR. GREEN, plaintiff's attorney] Then, the court is going to tell you that he has 34 years, 34.8, if he lives a normal life expectancy for a man his age. And you heard the doctor testify that every day after he works he has

pain and weakness and is sometimes limping in that right hip. And in that right leg it doesn't keep him from working, but it's a discomfort. It bothers him. If he sits in the pickup too long he has the same problem.

"Now, at this age—make that by a yearly amount —is a little bit high, but thinking in the future as other degenerative processes occupy our body, coupled with what he has, I think if you average upward $3,000.00 a year—

"[MR. HOLMES, defendant's attorney] Your Honor, I'm going to object to that. That's a per diem argument and there's no evidence to support the figure.

"* * * * *.

"THE COURT: The objection will be overruled on the ground that this is but a suggested course of reasoning from the evidence of injuries."

■ Our decision in *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 201-202, 421 P2d 370 (1966), is not directly in point but is of assistance. The same type of argument was made by counsel in that case regarding damages for loss of future earning capacity. Unlike a claim for damages for pain and suffering, evidence can be introduced concerning the amount of loss suffered from impaired earning capacity. In *Tite-Knot,* however, no evidence was introduced concerning the amount of income loss. We held:

"* * * The above argument is appropriate in a situation like the present one where plaintiff has suffered a serious injury which will limit his activities. The argument is not a representation to the jury that plaintiff will lose a specific amount of money per day, but is a suggested course of reasoning from the evidence of his injuries to an award which will include damages for loss of future earning capacity." 245 Or at 202.

■■ There is no standard for the measurement of pain and suffering. Juries in Oregon are merely instructed that they should award such sum as will reasonably compensate plaintiff for any pain and discomfort suffered. Despite the lack of any standard or any evidence of what will reasonably compensate for pain and suffering, as long as damages for pain and

suffering continue to be a proper element of damages, we are of the opinion that counsel can properly suggest what is reasonable compensation.

■ We know of no serious contention in the bench or bar of Oregon that counsel cannot properly argue that a certain lump sum should be awarded for all the pain and discomfort suffered and to be suffered. If this kind of argument is proper, an argument to the jury that a certain sum is reasonable for a year's compensation and that that sum can be multiplied by the years of life expectancy, does not appear to us to be improper.

Appellate courts have divided on the permissibility of this kind of argument. Several of these cases are collected in 1962 Illinois Law Forum 269. *Botta v. Brunner,* 26 NJ 82, 138 A2d 713, 60 ALR2d 1331 (1958), is a leading case for the proposition that the argument is improper. However, the majority in that case concluded that it was also improper for counsel to suggest to the jury any sum, including the sum stated in the damage paragraph of the complaint.

■ Counsel did not represent that there was evidence that the sum he suggested was reasonable compensation. He did not suggest that the jury had to accept the sum he suggested. He did not unduly dwell on this approach to fixing damages. Under these circumstances the trial court did not err in overruling defendant's objection.

Lastly, the defendant contends the trial court erred in overruling his objection to the filing of the verdict.

■ The special verdict form submitted by the defendant could not be used because it referred to the degree of fault of Dukes who had not been joined as a party. The jury returned a verdict awarding "to the plaintiff general damages in the amount of $37,500 and special damages in the amount of $8,306.10." The essence of defendant's objection was that the jury awarded plaintiff the full amount prayed for as special damages, but only a portion of the amount prayed for as general

damages. The defendant argues that the jury may have computed these amounts improperly by reducing the amount of general damages because they found the plaintiff partly at fault while improperly failing to also reduce the special damages because of plaintiff's fault.

■ The verdict was unobjectionable. The jury was correctly instructed and the presumption is that the jury followed the instructions. *Sedillo v. City of Portland,* 234 Or 28, 33-34, 380 P2d 115 (1963). It is possible that the jury made an improper award,"but to speculate concerning the mental processes of juries is forbidden the courts * * *." *Mullins v. Rowe,* 222 Or 519, 522, 353 P2d 861 (1960).

Affirmed.

**BRYSON, J.,** specially concurring.

The majority opinion approves the use of the "per diem" argument when addressing the jury on the issue of damages for future pain and suffering. This case is not an aggravated use of the "mathematical computation method." Here, plaintiff's counsel referred to plaintiff's life expectancy and suggested to the jury a yearly mathematical computation for arriving at pain and suffering, "I think if you average upward $3,000 a year * * *" (for pain and suffering).

The decisions from other courts are in disagreement as to the propriety of the use of mathematical formulas in estimating, for the jury, the amount to be awarded for pain and suffering. Annot. 60 ALR2d 1347. One of the leading cases is *Botta v. Brunner,* 26 NJ 82, 138 A2d 713, 60 ALR2d 1331 (1958).[1] The New

---

[1] In *Gleitman v. Cosgrove,* 49 NJ 22, 227 A2d 689, 704 (1967), the court repeated the observation that pain and suffering has "no dimensions, mathematical or financial * * *." *Mileski v. Long Island Railroad Company,* 499 F2d 1169, 1173 n 3 (2d Cir 1974), cites *Botta v. Brunner,* 26 NJ 82, 138 A2d 713, 60 ALR2d 1331 (1958), for the proposition that counsel may not use the "per diem" argument.

Jersey court, after confronting the problem on several occasions, stated:

"After granting certification to study the entire matter, we requested supplemental briefs in order to deal more fully with a problem which is currently vexing the trial courts, *i.e.,* the right of plaintiff's counsel in personal injury damage suits to suggest monetary mathematical formulas to a jury for the computation of compensation for pain and suffering." 26 NJ at 87.

The court then concluded that the procedure should not be allowed and held that to do so was reversible error.

There is no similarity between damages for loss of future earning capacity and those for pain and suffering. *See Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966). In the former there is evidence of the plaintiff's earning capacity, which is subject to mathematical computations. In the latter it is universally held that compensation for pain and suffering is not subject to mathematical computation and is not capable of being exactly and accurately determined in dollar amounts.

"* * * There is and there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to the establishment of damage awards for personal injuries. And it is equally plain that there is no measure by which the amount of pain and suffering endured by a particular human can be calculated. No market place exists at which such malaise is bought and sold. * * *" *Botta v. Brunner, supra* at 92-93.

In Oregon, the measure of damages for pain and suffering as a result of a personal injury has always been "fair and reasonable compensation." See Uniform Jury Instruction No. 30.02(1). To allow "per diem" argument for pain and suffering is to encourage speculation and confusion in trial procedure.[2] In order

---

[2] Counsel's Per Diem Argument to Jury, 1962 Ill L Forum 269; *King v. Railway Express Agency,* 107 NW2d 509 (ND 1961); *Caley v. Manicke,* 24 Ill 2d 390, 182 NE2d 206 (1962); *Ahlstrom v. Minneapolis, St. P. & S. S. M. R. R.,* 244 Minn 1, 68 NW2d 873 (1955); *Stassun v. Chapin,* 324 Pa 125, 188 A 111 (1936); *Henne v. Balick,* 51 Del 369, 146 A2d 394 (1958).

to avoid future confusion, the practice, herein complained of, should not be encouraged to the point of allowing the use of prepared charts, blackboard displays or similar techniques—none of which are received in evidence.

Because this is the first time this court has confronted the problem and because the infraction in this case is one of minor departure, this case should not be reversed on this ground. The rule here proposed should be prospective in application.