Argued and submitted September 9, 1988, award of punitive damages vacated; otherwise affirmed July 19, reconsideration denied October 13, petition for review denied November 16, 1989 (308 Or 500)

WILSON,
*Respondent,*

*v.*

TOBIASSEN,
*Defendant,*

*and*

OREGON TRAIL COUNCIL, INC., et al,
*Appellants.*

(CV-86-0293; CA A44479)

777 P2d 1379

Peter R. Chamberlain, Portland, argued the cause for appellants. With him on the brief were Kathryn R. Janssen and Bodyfelt, Mount, Stroup & Chamberlain, Portland.

William A. Barton, Newport, argued the cause for respondent. With him on the brief were Bruce Smith, Douglas S. Mitchell and Cass, Scott, Woods & Smith, Eugene.

Before Buttler, Presiding Judge, and Warren and Graber, Judges.

WARREN, J.

## WARREN, J.

Boy Scouts of America (BSA) and the Oregon Trail Council (OTC), an Oregon scouting organization which operates under the authority of BSA, appeal a judgment awarding general and punitive damages for negligence, specifically, the negligent infliction of emotional distress.[1] The jury also awarded damages against Tobiassen, a volunteer Boy Scout troop leader, who sexually abused plaintiff, one of his troop members. He does not appeal.

BSA is a national nonprofit corporation with a Congressional mandate to organize and promote scouting. Local councils, such as OTC, promote scouting at the regional level under BSA charters. In 1982, OTC had about seven paid employes, including Harris, District Director for the Benton District. Executive employes at OTC's Eugene Headquarters included Clark and Dempsey, who both supervised Harris.

Individual scout troops are created by sponsors, local organizations which volunteer their services to create and maintain and provide liaison with the troops. A troop is governed by a troop committee made up of the liaison person, parents and other interested adults. The troop committee selects and appoints and can terminate scoutmasters. In 1978 or 1979, the Troop Committee of Troop 186 in the Benton District appointed Tobiassen scoutmaster. He had been active in scouting since the 1960's, serving in many leadership capacities, including four years on OTC's Board of Directors during the 1970's. BSA requires all scout leaders to register annually and to receive approval from both OTC and the national office. Tobiassen was registered as Troop 186 scoutmaster every year from 1978 until his arrest for sexual abuse in 1984.

BSA has established "Standards of Leadership" that scout leaders must meet, including specific procedures for dealing with cases of sexual misconduct, but it does not conduct investigations. Any suggestion of impropriety by a leader is investigated by OTC and the Troop Committee.

Plaintiff joined Troop 186 in 1981. Eloise Bass testified that, in August, 1982, she told Harris that she had heard

---

[1] Plaintiff's negligence claim alleges that defendants' negligence caused emotional and psychological injury. We have construed that as a claim for negligent infliction of emotional distress.

that Tobiassen had been fired from Frederick and Nelson Co. in 1972 for sexual abuse of a stock boy and also told him that Tobiassen "has been molesting boys." Bass testified that she tried to approach Harris on other occasions and that he would not hear her out. Harris testified that Bass approached him only once, and only with the 1972 story, and that he thought that she was a gossip and not to be believed.

Theresa Emigh, mother of a scout in Troop 186, testified that, in the fall of 1982, she telephoned Harris, told him that Tobiassen was sexually abusing a boy in his troop and thought that she gave her name. She testified that Harris downplayed the information and told her that he would investigate.

Harris testified that an anonymous caller told him only that her friend's son had complained of an inappropriate backrub by Tobiassen during a cookout. He admitted in deposition that, to make her feel better, he might have told her that he would investigate. He thought that, if the problem had been serious, the victim's mother would have called him directly or someone would have called with more specific information. Harris reported the matter to Clark, a senior OTC executive, who told Harris to gather information and report to Dempsey, another senior OTC executive. Harris made a report in a letter to Dempsey.

Emigh also testified that, on November 22, 1982, she called long distance to the OTC Eugene office and thought that she spoke with Dempsey and explained her concern about abuse by Tobiassen, gave him her name and phone number and was told that it would be taken care of and that she need not contact anyone further. Dempsey denied receiving a call. Emigh's phone records documented a one-minute call to the office.

Dempsey recalls receiving the letter from Harris, which was later lost, and that he and Harris discussed the matter at an OTC staff meeting. Dempsey denied that the letter or discussion raised a question of sexual impropriety. Harris left that meeting feeling that he should "keep my eyes and ears open so to speak to any *further* problems and to stay on top of it." (Emphasis supplied.) No investigation was conducted. Harris did not mention the matter to Tobiassen, whom he saw at least a few times a month. On November 30,

Emigh reported the alleged abuse to the Benton County Sheriff and told him that Harris and Dempsey had told her that they would take care of it and not to call anyone else. The sheriff did nothing.

Tobiassen had a long history of community involvement and leadership with various organizations, including the Board of Directors of Campfire Girls, the Benton County Mental Health Advisory Board, the Corvallis Chamber of Commerce and United Way. He had been active in scouting since the 1960's, serving in many leadership capacities, including four years on OTC's Board of Directors during the 1970's.

In the spring of 1984, plaintiff reported Tobiassen to the Benton County Sheriff, and charges were brought. During this civil case, Tobiassen admitted that he had sexually molested plaintiff at least fifteen times between 1981 and 1984, when he had supervisory responsibility over the scouts.

Defendants make six assignments of error. They first argue that the trial court erred in denying their motion for a directed verdict. They argue that proof of emotional damages without physical injury is not sufficient to justify submission of a claim to the jury. Defendants admit that Tobiassen offensively touched plaintiff. They deny liability for that touching, because the trial court allowed a partial summary judgment that determined that neither BSA nor OTC was vicariously liable for Tobiassen's acts.

**1.**      Defendants' argument has two components. First, underlying their argument is the contention that, because they are not *vicariously* liable for Tobiassen's touching of plaintiff, they cannot be held liable at all for the emotional consequences of that touching. Defendants are wrong; they are liable for their own acts of negligent supervision.[2] That there is no vicarious liability does not foreclose direct liability for some or all of the same damages.

**2.**      Second, defendants assert that they cannot be liable to plaintiff, because they themselves did not touch him. They

---

[2] We distinguish this case from *Dunn v. Gracia,* 95 Or App 150, 768 P2d 419, *rev den* 307 Or 719 (1989), in which we found no liability as a matter of law by BSA and its local affiliate for troop leader sex abuse. The plaintiffs there alleged only vicarious liability, not direct organizational negligence. We found no vicarious liability and affirmed a summary judgment for the defendant.

rely on the rule requiring "physical impact" in cases where the only damages claimed are for negligently inflicted emotional distress. *See Saechao v. Matsakoun,* 78 Or App 340, 717 P2d 165, *rev dismissed* 302 Or 155 (1986). Defendants misunderstand the purpose of the rule. Physical impact is not an element of proof to establish a particular defendant's *liability* in the first instance. Rather, it is a threshold for a plaintiff's recovery of a particular form of *damages,* damages for emotional distress. The impact "affords the desired guarantee that the mental disturbance is genuine." Prosser and Keeton, *Torts* 363 (5th ed 1985). In this case, BSA and OTC admit that offensive touching by Tobiassen occurred. Plaintiff is asking for damages for emotional distress arising out of that touching. The physical impact test was, therefore, met, and plaintiff's claim was properly submitted to the jury.

**3.** Defendants' next assignment of error is that the trial court erred in denying their motion to strike punitive damages. Their argument is directed, not at the pleading, but at the judicial role of evaluating the *evidence* before punitive damages may be submitted to the jury. They argue that the evidence does not meet the high standard required to punish conduct.

In Oregon, punitive damages cannot be awarded for ordinary negligence. In *Noe v. Kaiser Foundation Hosp.,* 248 Or 420, 422-23, 435 P2d 306 (1967), the Supreme Court pointed out that the court had only allowed punitive damages for gross negligence in medical malpractice cases. The court also suggested that there might be situations justifying punitive damages in other than medical malpractice cases when there was gross negligence and the offending party had a special duty to the person injured. 248 Or at 425. *See also Andor v. United Air Lines,* 303 Or 505, 511 n 4, 739 P2d 18 (1986).

In this case, plaintiff proved no more than ordinary negligence so that, regardless of what duty OTC and BSA might have had to plaintiff, punitive damages would not be justified. Plaintiff's evidence showed that, in August, 1982, Bass told Harris and Dempsey about an incident of abuse that had happened ten years earlier and that Tobiassen "has been molesting boys" and also that Emigh told them in November, 1982, that an incident of abuse had occurred at a cookout

involving her son's troop. The evidence also showed that Harris and Dempsey told Emigh that they would take care of it and that she need not contact anyone else. Evidence shows that they chose not to investigate the information provided by Bass and Emigh.

Although there was clear evidence that Tobiassen intentionally harmed plaintiff, OTC and BSA are not vicariously liable for his acts. Defendants' actions alone only amount to simple negligence, which does not justify punitive damages under Oregon law. The trial court erred in submitting the issue to the jury.

4.    Defendants assert that a reversal on the issue of punitive damages requires a new trial, arguing that the court's ruling permitted plaintiff to submit evidence and to make arguments that would have been improper had the court stricken punitive damages. As examples, defendants refer to plaintiff's evidence of child abuse nationally and statements that plaintiff was not the only victim, that "every group that has participated and relied on [OTC and BSA] to their detriment is a true victim" and that the message of punitive damages will alert BSA councils to this "menace." Defendants do not claim that they objected to the evidence or the arguments at trial. Our decision to reverse the judgment for punitive damages is not based on plaintiff's legal inability to bring a claim for punitive damages in a case of this kind, but merely on the insufficiency of the evidence at trial to submit that claim to the jury.

Although submission of punitive damages to the jury permitted plaintiff to make arguments that would have been improper had those damages been removed from its consideration, defendant has not shown that it was prejudiced. The trial court properly instructed the jury as to what it should consider in deciding what general damages plaintiff had sustained. It also instructed the jury as to what it could consider, if it decided to award punitive damages. We presume that the court's instructions were adhered to. *DeMaris v. Whittier,* 280 Or 25, 31, 569 P2d 605 (1977). If they were, plaintiff was not prejudiced, because evidence relevant to punitive damages would not have been considered in the award of general damages.

5.    Defendants next argue that the trial judge should

have barred plaintiff's claim to the extent that his injuries resulted from consensual conduct. We disagree. Oregon's criminal code provides that a person under eighteen is incapable of consenting to a sexual act. ORS 163.315(1). Defendants argue that that incapacity to consent does not apply in civil cases. In *Hough v. Iderhoff,* 69 Or 568, 139 P 931 (1914), the underlying crime was carnal knowledge with a female under sixteen, and consent was held to be no defense to civil liability for the act. Similarly, *Restatement (Second) Torts,* § 892C(2) (1979), provides that, "[i]f conduct is made criminal in order to protect a certain class of persons irrespective of their consent, the consent of members of that class to the conduct is not effective to bar a tort action." Accordingly, we hold that a person's incapacity to consent under ORS 163.315(1) extends to civil cases.

**6.** Defendants next assign as error the trial court's denial of their motion to strike the testimony of an expert witness. Plaintiff argues that defendants did not preserve the error, because the motion was not timely. A motion to strike incompetent testimony should be timely made, and a party must move as soon as the ground for the motion is disclosed. *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 421, 528 P2d 522 (1974). If the ground for objection is disclosed on cross-examination, a motion to strike after redirect is untimely and may be denied. *City of Ashland v. Hoffarth,* 84 Or App 265, 733 P2d 925, *rev den* 303 Or 483 (1987).

**7.** In this case, plaintiff moved to strike the expert's testimony because it assumed as true a date on which the abuse was started, a fact not in evidence and conceded by plaintiff's attorney to be unknown. Assuming that the abuse had started in August, 1982, the expert predicted that 60 percent of the harm to plaintiff could have been avoided had OTC removed Tobiassen from his scoutmaster's responsibilities in November, 1982, shortly after Emigh's complaints. The expert's use of the 1982 date in his analysis was revealed, at the latest, during cross-examination. Defendants did not object to or move to strike the testimony until after the jury had been excused. It was not error to deny the motion.

**8.** Finally, defendants argue that it was error to instruct the jury that it could award damages for the cost of future psychological counseling, because he did not undergo any

therapeutic counseling before his trial. Although that is true, there was extensive evidence that plaintiff was suffering psychological problems, that he could expect a sexual identity crisis in the future and that he would have chronic problems with authority figures. "[A] jury can consider future possibilities in determining damages and * * * evidence of the degree of likelihood should be admitted for the jury's determination." *Feist v. Sears, Roebuck & Co.,* 267 Or 402, 407, 517 P2d 675 (1983); *Harris v. Kissling,* 80 Or App 5, 721 P2d 838 (1986). There was ample evidence of the possibility that plaintiff would require counseling services in the future. That was sufficient to justify the submission of that claim to the jury.

**9.**     Defendants also argue that, because the only evidence regarding the cost of that counseling was a clinical psychologist's testimony that he was charging $75 per hour to *evaluate* the plaintiff's present condition, there was no evidence of what fee he or another counselor would charge for *counseling.* However, during their closing argument, defendants encouraged the jury to award

> "[Plaintiff] one thing he needs, and that is some counseling. Give him five years of counseling. Give him an hour a week with someone like Dr. Matarazzo. Remember, Dr. Small said he charges $75 an hour, $600 a day. Seventy-five dollars an hour, or $100 an hour, give him the best, and an hour a week, five years. That costs about $20,000."

Given that evidence and defendants' argument, it was not unreasonable for the jury to assume that the $75 per hour that the clinical psychologist testified that he was charging for evaluation of plaintiff was also his hourly fee for counseling. The court did not err in instructing the jury on an issue as to which the defendants had invited the jury to make an award of damages.

Award of punitive damages vacated; otherwise affirmed.