# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARLOS RENE RIVAS-GOMEZ,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 03-72087

Agency No.
A74-705-590

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 5, 2004—Portland, Oregon

Filed April 3, 2006

Before: Edward Leavy, Stephen S. Trott, Circuit Judges, and
Louis H. Pollak,* Senior District Judge.

Opinion by Judge Trott;
Dissent by Judge Pollak

---

*Hon. Louis H. Pollak, Senior U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

**COUNSEL**

Philip Smith, Portland, Oregon, for the petitioner.

Nicole Hope Nelson, Hecht & Smith, LLP, Portland, Oregon, for the petitioner.

Leslie McKay, U.S. Department of Justice, Washington, D.C., for the respondent.

Keith Bernstein, U.S. Department of Justice, Washington, D.C., for the respondent.

**OPINION**

TROTT, Circuit Judge:

This petition for review raises the question of whether a conviction under Oregon Revised Statutes ("ORS") § 163.355 (rape in the third degree), which criminalizes as a felony "sexual intercourse with another person under 16 years of age," constitutes an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(A). We conclude, as did the Immigration Judge ("IJ"), that it does. However, because the IJ erroneously applied a heightened standard when deciding whether to grant a waiver under 8 U.S.C. § 1159(c), we grant the petition in part and remand.

**BACKGROUND**

Carlos Rene Rivas-Gomez ("Rivas"), a native and citizen of Guatemala, entered the United States in 1997 as an asylee. In 2001, Rivas pleaded guilty to felony rape in the third degree pursuant to ORS § 163.355. He was placed on three years' formal probation under Oregon's "Sex Offender Provisions." These provisions made Rivas eligible under Oregon law for registration and supervision as a "predatory sex offender." ORS § 181.585-181.592. The charge arose out of a sexual relationship between Rivas, who was nineteen years old at the time, and a fourteen-year-old girl. The Immigration and Naturalization Service ("INS")[1] initiated removal proceedings against Rivas pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), which renders deportable "any alien who is convicted of an aggravated felony at any time after admission." "Rape" is classified by federal law an aggravated felony. 8 U.S.C. § 1101(a)(43)(A) (defining "aggravated felony" as "murder, rape, or sexual abuse of a minor").

---

[1]Pursuant to the Department of Homeland Security Reorganization Plan, as of March 1, 2003, the INS was abolished and its functions were transferred to the Department of Homeland Security. *See* 6 U.S.C. § 542.

The IJ terminated Rivas's asylee status and ordered Rivas removed to Guatemala, finding that Rivas's conviction for rape in the third degree constituted an aggravated felony, and denying Rivas's application for a waiver under 8 U.S.C. § 1159(c). The Board of Immigration Appeals summarily affirmed the immigration judge's decision, rendering the IJ's decision the final agency determination. *Thomas v. Gonzales*, 409 F.3d 1177, 1182 (9th Cir. 2005). Rivas now appeals the IJ's decision, arguing that his felony conviction for rape in the third degree under Oregon law does not fall within the ordinary, contemporary, and common meaning of the word "rape" because the crime does not require (1) force or fear or intimidation, and (2) a factual lack of consent. In supplemental briefing, Rivas argues also that the IJ erred when he applied a heightened standard to Rivas's waiver application.

## STANDARD OF REVIEW

We review de novo the issue of whether a particular offense constitutes an aggravated felony. *See Park v. INS*, 252 F.3d 1018, 1021 (9th Cir. 2001). Purely legal questions are also reviewed de novo. *See De Martinez v. Ashcroft*, 374 F.3d 759, 761 (9th Cir. 2004).

## DISCUSSION

We have jurisdiction to review questions of law raised in a petition for review. 8 U.S.C. § 1252(a)(2)(D). Therefore, we have jurisdiction to consider Rivas's claims (1) that his criminal conviction does not constitute an aggravated felony, *see Valencia v. Gonzales*, ___ F.3d ___, 2006 WL 522452, *1 (9th Cir. March 6, 2006), and (2) that the IJ erroneously applied the law in denying his waiver application.

### A. Aggravated Felony

**[1]** In determining whether Rivas's conviction qualifies as an aggravated felony, we apply the analytical model set forth

in *Taylor v. United States*, 495 U.S. 575 (1990). *See United States. v. Pallares-Galan*, 359 F.3d 1088, 1099 (9th Cir. 2004). Under the *Taylor* categorical approach, "the issue is not whether [the defendant's] actual conduct constituted an aggravated felony, but whether the *full range of conduct* encompassed by [the statute the defendant violated] constitutes an aggravated felony." *United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172 (9th Cir. 2000) (alterations and in original) (quoting *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir. 1994)) .

**[2]** The *Taylor* categorical approach requires that we look to the "ordinary, contemporary, and common meaning" of the word "rape" to determine whether the conduct prohibited by ORS § 163.355 falls within that definition. *See United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999) ("[W]e must interpret the undefined term 'sexual abuse of a minor' by 'employing the ordinary, contemporary, and common meaning of the words that Congress used.' ") (quoting *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1174 (9th Cir. 1999)). In so doing, we "look solely to the statutory definition of the crime, not to the name given to the offense or to the underlying circumstances of the predicate conviction." *Baron-Medina*, 187 F.3d at 1146.

**[3]** We have previously looked to Black's Law Dictionary for the contemporary meaning of the word "rape," as well as for other terms used in state statutes. *See United States v. Yanez-Saucedo*, 295 F.3d 991, 996 (9th Cir. 2002) (citing Black's Law Dictionary for the contemporary definition of "rape"); *Castro-Baez v. Reno*, 217 F.3d 1057, 1059 (9th Cir. 2000) (same); *United States v. Pallares-Galan*, 359 F.3d at 1100 (defining "sexual abuse"). Black's Law Dictionary defines "rape" as "[u]nlawful sexual activity . . . with a person . . . without consent and *usu[ally]* by force or threat of injury." Black's Law Dictionary 1288 (8th ed. 2004) (emphasis added). Thus, the ordinary, contemporary, and common legal meaning of "rape" — the gravamen of the offense — "con-

tains at least the following elements:" that the defendant engage in sexual activity with another person and that the sexual activity is (1) unlawful and (2) without consent.[2]

We conclude that the full range of the conduct prohibited by Oregon's third-degree rape statute falls squarely within the ordinary, contemporary, and common meaning of the word "rape."

[4] First, the Oregon statute prohibits "sexual intercourse with another person under 16 years of age." ORS § 163.355. The statute criminalizes sexual intercourse with a minor, rendering such conduct "unlawful."

[5] Second, as to the "without consent" element of the contemporary rape definition, Oregon's criminal code provides that "[a] person is considered incapable of consenting to a sexual act if the person is . . . [u]nder 18 years of age." ORS § 163.315(1)(a); *see also Wilson v. Tobiassen*, 777 P.2d 1379, 1384 (Or. Ct. App. 1989) (stating that "a person under eighteen is incapable of consenting to a sexual act"). Sexual activity with a person under the age of eighteen is, as a matter of Oregon law, "without consent." Therefore, Oregon's third-degree rape statute, which prohibits sexual intercourse with persons under the age of sixteen, contains an inherent "without consent" element. With respect to this element of rape, we see no material difference *in this context* between rape where the victim expresses a lack of consent, or is unconscious or asleep or duped, on one hand, and rape where the victim because of youth and vulnerability is, as a matter of law, incapable of consenting, on the other.

---

[2]In *Taylor*, the Court followed this analytical process and determined that, "[a]lthough the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 495 U.S. at 598.

**[6]** Nevertheless, Rivas argues that his conviction does not fall within the ordinary, contemporary, and common meaning of the word "rape" because the statute under which he was convicted does not contain a requirement that the victim's resistance be overcome by force or fear. However, we have already rejected the argument that the contemporary definition of rape includes a forcible compulsion element. *See Yanez-Saucedo*, 295 F.3d at 996 (concluding that "third-degree rape under [Washington Revised Code] § 9A.44.060(a) fits within a generic, contemporary definition of rape, which can, *but does not necessarily*, include an element of physical force beyond that required for penetration") (emphasis added). In addition, the controlling federal statute does not draw an exclusionary distinction between the different ways that the crime of rape can be committed.

**[7]** As a general rule, neither force nor fear is an essential element of rape. In California, for example, rape is described as an "act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances:"

    (1)    Where a person is incapable, because of a mental disorder or developmental disability, of giving legal consent. . . . .

    (2)    Where it is accomplished against a person's will by means of force, violence, duress, menace, or fear of . . . injury on the person of another.

    (3)    Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused.

    (4)    Where a person is at the time unconscious of the nature of the act, and this is known to the

accused. As used in this paragraph, "unconscious of the nature of the act" means incapable of resisting because the victim meets one of the following conditions:

(A)   Was unconscious or asleep.

(B)   Was not aware, knowing, perceiving, or cognizant that the act occurred.

(C)   Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraud in fact.

(D)   Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the sexual penetration served a professional purpose when it served no professional purpose.

(5)   Where a person submits under the brief that the person committing the act is the victim's spouse, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce the belief.

(6)   Where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat. As used in this paragraph, "threatening to retaliate" means a threat to kidnap or falsely imprison, or to inflict extreme pain, serious bodily injury, or death.

(7) Where the act is accomplished against the victim's will by threatening to use the authority of a public official to incarcerate, arrest, or deport the victim or another, and the victim has a reasonable belief that the perpetrator is a public official. As used in this paragraph, "public official" means a person employed by a governmental agency who has the authority, as part of that position, to incarcerate, arrest, or deport another. The perpetrator does not actually have to be a public official.

Cal. Penal Code § 261.

We are informed in this respect by our holding in *Castro-Baez v. Reno*, 217 F.3d at 1059, that a conviction under Section 261(a)(3) of the California Penal Code for engaging in sexual intercourse with a victim who could not resist because of the ingestion of drugs or other intoxicants qualified as rape pursuant to Section 1101(a)(43)(A), and was therefore an aggravated felony. We said, "In ordinary usage, rape is understood to include the act of engaging in non-consensual sexual intercourse with a person whose ability to resist has been substantially impaired by drugs or other intoxicants." *Id.* at 1059. Furthermore, under California law, a person 21 years of age or older who engages in an act of unlawful sexual intercourse with a minor who is under 16 years of age is subject to either felony or misdemeanor prosecution and imprisonment of up to four years in prison. Cal. Penal Code § 261.5(d). The title of California's crime is "Unlawful Sexual Intercourse," but, as we learn from *Baron-Medina*, we look to the conduct proscribed, not simply the title of the statute.

In *Taylor*, as here, the defendant attempted to subdivide Congress' use of a word referencing a crime, i.e. "burglary," into various subclasses, and to narrow or to restrict the term "burglary" to especially dangerous subclasses of burglaries, such as those where the "offender is armed, or the building is

occupied, or the crime occurs at night." *Id.* At 588. This attempt failed. The Court said,

> Congress presumably realized that the word "burglary" is commonly understood to include not only aggravated burglaries, but also run-of-the-mill burglaries involving an unarmed offender, an unoccupied building, and no use or threat of force.

*Id.* at 597.

Looking at the full range of conduct covered by the statute here, it is sexual intercourse with a youthful person in need of protection and without adequate armor against the act, a person who, by virtue of age, vulnerability, and immaturity with respect to an appreciation of the potential consequences of the prohibited behavior, has been shielded by law from the serious ramifications and hazards of exploitive sexual intercourse. The hazards of this behavior inflicted upon a minor, which include the physical risks of sexually transmitted disease as well as the burdens of teenage unmarried pregnancy, have been determined by Oregon's legislative and executive branches of government to be serious enough to the present and future health and welfare of the victim taken advantage of to render the victim incapable of consenting to the act as a matter of law. In addition, the conduct proscribed by law is sufficiently egregious that a person who violates it becomes a felon and is subject to the loss of liberty, with sexual offender supervision and registration conditions attached.

It is the conduct proscribed by the Oregon statute which violates the physical integrity of the victim that drives our analysis, not the label. The petitioner has not brought to our attention any state cases wherein a person has been convicted of this crime without directly engaging in the prohibited conduct. The crime, unlike the crime we analyzed in *Pallares-Galan*, is not a simple misdemeanor; and it does not encompass a range of conduct so extensive that it includes peripheral

behavior equivalent to "offering minor females a ride home, driving in the opposite direction, and refusing to let them out of the car until they have escaped," or "repeatedly driving past a young girl, looking at her, and making hand and facial gestures at her." 359 F.3d at 1101.

Our respected dissenting colleague appears to have been led in his analysis by his judgment that rape of this kind is not generally regarded as serious as forcible rape. True, the punishment may be different, but this difference is not dispositive because all felony rape — whatever the methodology of the offender — appears to us to fall above the line that might separate aggravated from non-aggravated rape felonies — if there is such a thing. In this respect, we do not disagree at all with our dissenting colleague's statements that "[a]ssimilating Rivas's crime to generic rape is in a sense understandable," and that "Rivas's crime is called a type of rape."

Our recent decision in *Valencia v. Gonzales*, ___ F.3d ___, 2006 WL 522452 (9th Cir. March 6, 2006) does not compel a different conclusion. In *Valencia*, we considered only whether a California felony conviction for "unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator," Cal. Penal Code § 261.5(c), constituted a "crime of violence" under a different subsection of 18 U.S.C. § 1101(a)(43), subsection (F). We concluded that the petitioner's conviction was not a "crime of violence" under subsection (F) because it did not involve a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* at *2. We did not decide whether statutory rape was "rape" and thus an aggravated felony under subsection (A).

**[8]** Because ORS section 163.355 prohibits sexual activity that is both (1) unlawful and (2) without consent as a matter of law, we conclude that a conviction under that statute falls within the ordinary, contemporary, and common meaning of the word "rape." Rivas's conviction therefore constitutes an

aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(A).

## B. Waiver Standard

**[9]** Despite his aggravated felony conviction, Rivas remained eligible to apply for adjustment of status. However, because his conviction was for a "crime involving moral turpitude," 8 U.S.C. § 1182(a)(2)(A)(i)(I), Rivas was not admissible unless he obtained a waiver under 8 U.S.C. § 1159(c), which provides that the Attorney General "may waive" application of § 1182 "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." Rivas asserts that the IJ erred when he applied the heightened, "extreme hardship" standard when he denied Rivas's waiver application, raising two legal arguments. First, he asserts that in *Matter of Jean*, 23 I. & N. Dec. 373 (A.G. 2002), the Attorney General exceeded his statutory authority by imposing a heightened waiver standard for aliens convicted of violent or dangerous crimes. Second, he argues that the IJ erred in applying the heightened standard in his case without first determining that Rivas's aggravated felony conviction was for a violent or dangerous crime.

**[10]** *Jean* concerned a § 1182 waiver for a female alien who had been convicted of second-degree manslaughter in connection with the death of a nineteen-month-old child that had been left in her care. Reversing the BIA's grant of the waiver, the Attorney General determined that "evaluations of requests for waivers of inadmissibility . . . cannot . . . focus solely on family hardships, but must consider the nature of the criminal offense that rendered an alien inadmissible in the first place." *Id.* at 383. The Attorney General stated that "violent or dangerous individuals" would not be granted a waiver "except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of status

adjustment would result in exceptional and extremely unusual hardship." *Id.*

**[11]** Rivas's first argument that the Attorney General exceeded statutory authority by adopting a heightened standard is foreclosed by our decision in *Ayala-Chavez v. INS*, 944 F.2d 638, 641 (9th Cir. 1991). *Ayala-Chavez* upheld the Attorney General's requirement that waiver applicants under former § 212(c), 8 U.S. C. § 1182(c), with serious drug offense convictions demonstrate "outstanding equities." *Id.* Under *Ayala-Chavez* the Attorney General has broad discretion to grant or deny waivers and may establish general standards governing the exercise of such discretion "as long as these standards are rationally related to the statutory scheme." *Id.* Here, the Attorney General's heightened waiver standard for aliens convicted of violent or dangerous crimes is rationally related to the national immigration policy of not admitting aliens who would be a danger to society.

The second argument raised by Rivas, that the IJ erred when he applied the *Jean* "extreme hardship requirement" without first determining that Rivas's conviction was for a "violent or dangerous" crime has merit. While the government argues that the IJ merely balanced the equities when he denied the waiver, the IJ assumed from the beginning of the proceeding that Rivas's conviction triggered the *Jean* analysis, and concluded by stating:

> So the Court wishes to make its analysis plain. I believe that [the *Jean*] standard applies to him and the primary basis for my decision, which I cannot grant it, is because I do not believe that he had met that burden. I am not denying [the waiver] because of his either lack of accounting for the crime and the other things the Court is commenting on those. But the Court is denying it because it does not meet the hardship standard indicated by the Attorney General.

Thus, we consider Rivas's legal argument.

**[12]** In *Jean*, the Attorney General did not impose the heightened "extreme hardship" standard on all aliens with aggravated felony convictions, only on those who "engage in violent criminal acts." *Jean*, 23 I. & N. Dec. at 384. The determination in *Jean* was fact-based, not categorical. Moreover, in a subsequent decision the BIA specifically limited *Jean*'s heightened waiver requirement to "dangerous or violent crimes."[3] *In re K-A-*, 23 I. & N. Dec. 661, 666 (BIA 2004). Therefore, the IJ erred when he applied the "extreme hardship" standard without first making a determination based on the facts underlying Rivas's conviction that Rivas's crime was violent or dangerous. Thus, we grant the petition in part and remand for further proceedings consistent with this opinion.

**PETITION DENIED IN PART AND GRANTED IN PART. REMANDED.**

---

POLLAK, Senior U.S. District Judge, dissenting from Part A:

If I agreed with the court's determination that the offence to which petitioner Rivas pled guilty, and, for which he received a sentence of probation, constituted, an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(A), and hence that he should be removed to his native Guatemala, I would join the court's determination that the Immigration Judge erred in assessing Rivas's waiver application and that the matter should be remanded for further proceedings. But I am not in agreement with the court's ruling that Rivas's offense constituted an "aggravated felony." Therefore, I

---

[3]The BIA also stated that "even nonviolent aggravated felonies will generally constitute significant negative factors militating strongly against a favorable exercise of discretion." *Id.*

would grant Rivas's petition for review with direction to remand this matter to the IJ to reopen removal proceedings and to rescind the removal order.

I

At the age of fifteen, petitioner Rivas, a native of Guatemala, was admitted to the United States as an asylee. Four years later, Rivas, then nineteen and residing with his family in Oregon, was charged with the crime, under Oregon law, of "[r]ape in the third degree," which is defined as "sexual intercourse with another person under 16 years of age." ORS § 163.355. The charge grew out of Rivas's sexual relationship with a fourteen-year old schoolmate. Rivas pled guilty and was sentenced to a three-year probationary term.

Thereupon the former Immigration and Naturalization Service ("INS", which was one of the agencies whose functions were absorbed into the new Department of Homeland Security in 2003), initiated removal proceedings against Rivas. The asserted ground of removal was that the crime to which Rivas had pled guilty was an "aggravated felony," conviction for which, "at any time after admission," renders one subject to deportation. 8 U.S.C. § 1227(a)(2)(A)(iii). The term "aggravated felony" means "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A).

Concluding that the crime to which Rivas pled guilty was an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43)(A), the Immigration Judge entered an order of removal directing that Rivas be deported to his native Guatemala. The Board of Immigration Appeals summarily affirmed.

II

Rivas's petition for review argues that the Immigration Judge erred as a matter of law in finding that ORS § 163.355

is an "aggravated felony." It is Rivas's submission that Oregon's "rape in the third degree" is not "rape" as that word is used in the trilogy of "aggravated felon[ies]" specified in 8 U.S.C. § 1101(a)(43)(A). If Rivas is right, the Immigration Judge's order of removal must be set aside.

This court concludes that the crime to which Rivas pled guilty — Oregon's "rape in the third degree" — is "rape" within the meaning of the federal statutory phrase "murder, rape, or sexual abuse of a minor," 8 U.S.C. §1101(a)(43)(A), and hence the court denies Rivas's petition for review. For the reasons that follow, I disagree.

## III

The court is correct in following the path marked out by *Taylor v. United States*, 495 U.S. 575 (1990) in inquiring whether an offense is an "aggravated felony." The *Taylor* inquiry, as the court explains, "requires that we look to the 'ordinary, contemporary, and common meaning' of the word 'rape' to determine whether the conduct prohibited by ORS § 163.355 falls within that definition," *ante* at 3617 (citing *United States v. Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999)). The court then proceeds to consult Black's Law Dictionary to find the "ordinary, contemporary, and common meaning" of "rape." The court quotes the Black's Law Dictionary definition: "[u]nlawful sexual activity . . . with a person . . . without consent and usu[ally] by force or threat of injury." Black's Law Dictionary 1288 (8th ed. 2004). From this the court distills what it finds to be the two ingredients of "rape" — "that the sexual activity is (1) unlawful and (2) without consent," *ante* at 3618. The court then states that ORS § 163.355 "falls squarely within the ordinary, contemporary, and common meaning of the word 'rape.' " *Ante* at 3618. This is so, according to the court, because, *first*, ORS § 163.355 expressly proscribes — thus making "unlawful" — "sexual intercourse with another person under 16 years of age," and, *second*, another Oregon statute — ORS § 163.315(1)(a) —

provides that "[a] person is considered incapable of consenting to a sexual act if the person is . . . [u]nder 18 years of age." Thus, the court reasons, ORS § 163.355 "contains an inherent 'without consent' element." *Ante* at 3618. The court then goes on to state: "With respect to [the 'without consent'] element of rape, we see no material difference *in this context* between rape where the victim expresses a lack of consent . . . and rape where the victim . . . is, as a matter of law, incapable of consenting." *Ante* at 3618.

There are two difficulties with the court's analysis:

(1)   The first difficulty inheres in the court's assimilation of ORS § 163.355 to the Black's Law Dictionary definition of "rape." A more apt Black's Law Dictionary definition would be that of "statutory rape," to which the court does not refer. "Statutory rape" — "[u]nlawful sexual activity with a person under the age of consent (as defined by statute) regardless of whether it is against that person's will," Black's Law Dictionary 1288 (8th ed. 2004) — is, quite clearly, the prototype offense of which ORS § 163.355 is an example. "Statutory rape," as exemplified by ORS § 163.355, is not a sub-set of the generic offense called "rape." It is a distinct offense, separately codified by the Oregon legislature. *Compare* ORS § 163.355 *with* ORS § 163.375(1) ("A person who has sexual intercourse with another person commits the crime of rape in the first degree if . . . [t]he victim is subjected to forcible compulsion by the person" or "the victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness.").[1] Reference sources other than Black's Law

---

[1]Oregon is not alone in classifying the offense having the elements of generic "rape" separately from the offense constituting "statutory rape." In this Circuit, Alaska, Arizona, California, Nevada, and Washington do so as well. *Compare* Alaska Stat. § 11.41.410(a)(1) (Michie 2005) (criminalizing "sexual penetration with another person without consent of that person" as first-degree sexual assault) *with* Alaska Stat. § 11.41.436(a) (Michie 2005) (characterizing as sexual abuse of a minor in the second

Dictionary confirm the distinction between generic "rape" as an offense keyed to non-consent and "statutory rape" as an offense in which the absence of consent is not an issue. Thus, the American Heritage Dictionary defines "rape" as "[t]he crime of forcing another person to submit to sex acts, especially sexual intercourse," American Heritage Dictionary of

degree the act of an offender "16 years of age or older . . . [who] engages in sexual penetration with a person who is 13, 14, or 15 years of age and at least three years younger than the offender"); Ariz. Rev. Stat. § 13-1406 (2004) (criminalizing as a class 2 felony sexual assault, defined as "sexual intercourse or oral sexual contact with any person without consent of such person") *with* Ariz. Rev. Stat. § 13-1405 (2004) (criminalizing "sexual intercourse or oral sexual contact with any person who is under eighteen years of age," and characterizing that offense as a class 2 felony where the minor is under 15 years of age, or a class 6 felony where the minor is at least 15 years of age); Cal. Pen. Code § 261 (Deering 2004) (defining "rape" as a crime requiring force, duress, trickery, or an absence of actual consent (e.g., because the victim was sleeping or intoxicated)) *with* Cal. Pen. Code § 261.5(c)) (Deering 2004) (criminalizing, as a misdemeanor or felony, sexual intercourse with a minor who is more than three years younger than the offender); Nev. Rev. Stat. § 200.366 (2004) (characterizing as a category A felony "sexual assault," which the statute defines as "subject[ing] another person to sexual penetration, or [ ] forc[ing] another person to make a sexual penetration on himself or another, or on a beast, against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct . . . .") *with* Nev. Rev. Stat. § 200.368 (2004) (characterizing as a gross misdemeanor sexual intercourse committed by one who is between the ages of 18 and 21 with a minor under the age of 16, which Nevada terms "statutory sexual seduction," § 200.364); *and* Rev. Code Wash. § 9A.44.060(a) (2004) (criminalizing as a class C felony unconsented sexual intercourse where the "lack of consent was clearly expressed by the victim's words or conduct") *with* Rev. Code Wash. § 9A.44.079 (2004) (criminalizing as a class C felony sexual intercourse with a minor between the ages of 14 and 16 where the offender is at least forty-eight months older).

By contrast, three states in this Circuit treat generic "rape" and "statutory rape" as different aspects of the same offense. *See* Haw. Rev. Stat. § 707-730 (2004) (characterizing as a class A felony both sexual penetration resulting from strong compulsion and sexual intercourse with a minor

the English Language 1498 (3d ed. 1992), while defining "statutory rape" as "[s]exual relations with a person who has not reached the age of consent," *id.* at 1757. And the Encyclopedia Britannica instructs that "rape" is "sexual intercourse with a woman by a man without her consent, either through force or the threat of force or through fraud," and that "[s]exual intercourse with a female who is below consenting age is termed statutory rape, and consent is no longer relevant." 9 New Encyclopedia Britannica: Micropaedia 941 (1998). Moreover, in determining the "ordinary, contemporary, and common meaning" of "rape," it would seem of particular interest that the Department of Justice, in its annual National Crime Victimization Survey, characterizes "rape" as "forced sexual intercourse including both psychological coercion, as well as physical force." Bureau of Justice Statistics, Office of Justice Programs, U.S. Department of Justice, National Crime Victimization Survey Interviewing Manual for Field Representatives, http://www.ojp.usdoj.gov/bjs/pub/ascii/manual.txt (May 5, 2003).

(2)   As noted above, the court states that it "see[s] no material difference *in this context* between rape where the victim expresses a lack of consent . . . and rape where the victim . . . is, as a matter of law, incapable of consenting," *ante* at 3618. But it appears that the State of Oregon sees a difference. Under Oregon law, one "who has sexual intercourse with another person" when "[t]he victim is subjected to forcible compulsion by the person" or "is incapable of consent by reason of mental defect, mental incapacitation or physical

---

between the ages of 14 and 16 where the offender is at least five years older); Idaho Code § 18-6101 (2004) (defining "rape" as, *inter alia*, sexual penetration of a female under the age of 18, as well as sexual penetration of a female who resists but whose resistance is overcome by force or violence); Mont. Code Ann. § 45-5-501 (2004) (defining "without consent" as used in § 45-5-503 (Montana's provision for "sexual intercourse without consent") as, *inter alia*, sexual intercourse compelled by force, and sexual intercourse with a minor less than 16 years old).

helplessness" is guilty of "the crime of rape in the first degree," which "is a Class A felony." ORS § 163.375. But ORS § 163.355 — the crime to which Rivas pled guilty — "is a Class C felony." For a Class A felony, the maximum fine is $375,000, ORS § 161.625, and "the maximum term of an indeterminate sentence of imprisonment" is 20 years, ORS § 161.605; for a Class C felony, the maximum fine is $125,000, ORS § 161.625, and the maximum prison term is 5 years, ORS § 161.605.[2] (As noted above, Rivas was sentenced to three years' probation).

---

[2]Like Oregon, other states in this Circuit that classify the offense of generic "rape" in a separate provision from the offense of "statutory rape" tend to characterize "rape" as a significantly more serious crime. *Compare* Alaska Stat. § 12.55.125(I)(1) (Michie 2005) (setting the sentencing range for first-degree sexual assault, § 11.41.410(a)(1), at between 8 and 40 years) *with* § 12.55.125(I)(3) (setting the sentencing range for sexual abuse of a minor in the second degree, § 11.41.436(a), at between 5 and 20 years); Cal. Pen. Code § 264 (Deering 2004) (stating that the crime of "rape" as defined in § 261, *see supra* note 1, is "punishable by imprisonment in the state prison for three, six, or eight years") *with* Cal. Pen. Code § 261.5(c)) (Deering 2004) (positing one year as the maximum term of imprisonment for sexual intercourse with a minor who is more than three years younger than the offender); *and* Nev. Rev. Stat. § 200.366 (setting the minimum penalty for sexual assault, a category A felony, at 25 years imprisonment, with a maximum of life without parole) *with* § 200.368(2) (classifying "statutory sexual seduction" by one under the age of 21 years as a gross misdemeanor, punishable "by imprisonment in the county jail for not more than 1 year, or by a fine of not more than $ 2,000, or by both fine and imprisonment," § 193.140).

But this pattern appears not to obtain in Washington and Arizona. Washington criminalizes both unconsented sexual intercourse, Rev. Code Wash. § 9A.44.060(a), and intercourse with a minor, § 9A.44.079, as class C felonies, subject to a maximum term of imprisonment of five years, § 9A.20.021(1)(c)). In Arizona, sexual intercourse with a minor less than 15 years old is subject to a harsher penalty than is generic "rape," *compare* Ariz. Rev. Stat. § 13-604.01(C)) (2004) (setting the presumptive sentence for the first-time offender convicted of sexual conduct (including sexual intercourse, *see* § 13-1405) with a minor at twenty years if the minor is less than 15 years old) *with* Ariz. Rev. Stat. § 13-1406 (2004) (setting the statutory minimum penalty for sexual assault committed by a first-time offender, a class 2 felony, at 5.25 years, with a presumptive sentence of 7 years); by contrast, sexual intercourse with a minor who is at least 15

IV

Assimilating Rivas's crime to generic "rape" is in a sense understandable. Rivas's crime is called a type of "rape" — "rape in the third degree." But we have been admonished not to be misled by the tyranny of labels. In inquiring into the " 'ordinary, contemporary, and common meaning of the words that Congress used,' " *Baron-Medina,* 187 F.3d at 1146 (quoting *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1174 (9th Cir. 1999)), and comparing that meaning with the crime asserted to be an "aggravated felony," we are to "look solely to the statutory definition of the crime, *not to the name given to the offense* or to the underlying circumstances of the predicate conviction," *id.* (emphasis added).

The question to be determined is whether Rivas's crime is "rape" within the meaning of the word as Congress used it, in the statutory grouping "murder, rape, or sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A), to define the category of "aggravated felon[ies]" conviction for which would be ground for deportation. Prior to amendment of the statute in 1996, "murder" was the one listed crime. *See* 104 Pub. L. No. 208, § 321, 110 Stat. 3009-546, -628 (1996) (amending § 1101(a)(43)(A) by "inserting, 'rape, or sexual abuse of a minor' after 'murder' "). "Congress decided to broaden 8 U.S.C. § 1101(a)(43)(A) from just murder to include rape and sexual abuse of a minor, implicitly signaling that it felt both of these latter two crimes were of similar severity and import." *Guerrero-Perez v. INS*, 242 F.3d 727, 736 (7th Cir. 2001). ORS § 163.355 is not of "similar severity and import" to murder.

years old is subject to a lesser penalty than is generic "rape," *see* Ariz. Rev. Stat. § 13-701(C)) (2004) (setting a presumptive penalty of a year for the first-time offender convicted of sexual intercourse with a minor who is at least 15 years old).

## V

In sum, I conclude that the crime to which Rivas pled guilty was not an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43)(A).[3] Therefore, I would grant Rivas's petition for review and direct the IJ to reopen removal proceedings and rescind the removal order.

---

[3]The court relies on *United States v. Yanez-Saucedo*, 295 F.3d 991 (9th Cir. 2002), for support. That reliance is misplaced. The statute under which the alien was convicted in *Yanez-Saucedo* — Rev. Code Wash. § 9A.44.060 — is not analogous to ORS § 163.355. Section 9A.44.060 criminalizes, in pertinent part, "sexual intercourse with another person, not married to the perpetrator . . . [w]here the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct." Importantly, § 9A.44.060 requires that the victim clearly manifest her lack of consent, and it applies regardless of the age of the victim. In short, § 9A.44.060 does not criminalize statutory rape. Indeed, Washington has a separate provision for that crime, Rev. Code Wash. § 9A.44.079 (criminalizing "[r]ape of a child in the third degree," which the statute defines as "sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim"), and it is that provision which is the proper analog of ORS § 163.355 (criminalizing "[r]ape in the third degree," which the statute defines as "sexual intercourse with another person under 16 years of age"), *compare* ORS § 163.365 (criminalizing, as a class B felony, sexual intercourse with a person under the age of 14).